Marie **JOGGERST** and Roy **Joggerst,**
**Plaintiffs-Respondents,**

v.

Eugene P. **O'TOOLE,** Defendant-Appellant.

No. 35593.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 23, 1974.

Motion for Rehearing or Transfer Denied
Sept. 11, 1974.

Application to Transfer Denied Oct. 14, 1974.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for defendant-appellant.

John P. Montrey, St. Louis, for plaintiffs-respondents.

WEIER, Judge.

This is an action for damages. In Count I Marie Joggerst sued for $25,000.00 damages for personal injuries sustained when the automobile she was driving collided with an automobile owned and operated by defendant Eugene P. O'Toole. In Count II Roy Joggerst sought damages in the sum of $5,000.00 for his expenses and the loss of companionship of his wife. Plaintiffs' petition charged defendant O'Toole with primary negligence in driving the automobile at a high, dangerous, and excessive rate of speed under the circumstances, in failing to obey an electric traffic signal, and in failing to maintain a lookout. The petition also charged humanitarian negligence against O'Toole in failing to stop the vehicle, slacken its speed, swerve or give a warning. Plaintiffs' claim, however, was submitted to the jury only on the theory of humanitarian negligence in failing to stop or slacken speed. Defendant's answer was a general denial and a plea of contributory negligence. A trial jury returned a verdict for defendant, which was set aside by an order granting a new trial on the ground that the court erred in giving two instructions conversing defendant's humanitarian negligence.

Defendant has appealed, contending that the trial court should have sustained his motion for a directed verdict because plaintiffs failed to make a submissible case under humanitarian negligence. Secondly, defendant contends the court erroneously granted plaintiffs a new trial because he was entitled to separately converse plaintiffs' two verdict directors.

■ In determining whether plaintiffs made out a submissible case under humanitarian negligence, the evidence and all reasonable inferences arising therefrom must be viewed in the light most favorable to plaintiffs. Burns v. Maxwell, 418 S.W.2d 138, 140[1] (Mo.1967); Price v. Nicholson, 340 S.W.2d 1, 4–5[1] (Mo. banc 1960). We therefore review the evidence in the case and relate only that which is favorable to plaintiffs.

At the scene of the collision, Arsenal Street runs in a generally east-west direction. It is a four lane street consisting of two lanes for east-bound traffic and two lanes for west-bound traffic separated by a dividing stripe. A two-way street through Tower Grove Park runs generally in a north-south direction and enters the north side of Arsenal Street at an appreciably fanned-out right angle. The streets can be

depicted as a "T" intersection with Arsenal Street being the upper branch and the Tower Grove Park entrance being the bottom trunk. According to police officer Frank Stubits, who investigated the collision, the Park entranceway was approximately one hundred feet in width. At the time of the accident a light standard was located in the center of the northernmost part of the entranceway, dividing the north and south-bound lanes. Electric traffic signals for the west-bound lanes of Arsenal Street were located on the northeast and northwest corners of the intersection. East-bound traffic on Arsenal Street entering Tower Grove Park was controlled by a left turn traffic signal at the northeast corner of the intersection. The sequence of the electric traffic lights for east-bound traffic on Arsenal Street was as follows: after the display of a red light, the next indication was green to proceed east and an arrow to turn north into the Park. When the left turn arrow went off, the green to proceed east remained lit and there was a brief period allowed for left turning vehicles to clear the intersection. Following this clearing period, the light for west-bound traffic on Arsenal turned green.

On or about August 26, 1966, between 11:00 and 11:30 a. m., plaintiff Marie Joggerst was driving east on Arsenal Street intending to turn north into Tower Grove Park. The sun was shining and the streets were dry. Approaching the intersection, plaintiff was driving in the east-bound lane nearest the center line at 15 to 20 miles per hour with her left turn signal on. Across the intersection, headed west in the curb lane of Arsenal Street, the defendant O'Toole had stopped his automobile in compliance with the traffic signal. He was then at least 50 feet east of the point of collision, and according to his own testimony, perhaps as much as 72 feet from the point of impact. Plaintiff testified that she began her turn into Tower Grove Park at a rate of 15 to 20 miles per hour while the left turn arrow was in her favor, and

that the light changed while she was in the process of making the turn. Thereafter, defendant started from a stopped position, and drove to the point of collision. In this course of travel he accelerated to a speed of 15 to 17 miles per hour. Plaintiff Marie Joggerst testified that she did not "hear brakes" until the collision had actually occurred. The cars collided just east of the center of the Tower Grove Park entranceway with plaintiff's car having almost cleared the west-bound curb lane of Arsenal Street. The right front of defendant's car struck the right rear door and fender of plaintiff's automobile.

■ From the foregoing facts, we are of the opinion that the jury could have found that as plaintiff proceeded across the intersection and entered the eventual path of defendant's car, she came into and was in a position of immediate peril, and that defendant had ample opportunity to slacken his speed so as to have avoided the collision. In an "almost escaping case" it must be recognized that in many situations "the facts speak for themselves without the aid of expert evidence, as where the evidence shows that the plaintiff's vehicle had but barely failed to get in the clear before the occurrence of the collision, so that only the least additional time would have enabled the plaintiff to make his escape." Woods v. Kurn, 183 S.W.2d 852, 856 (Mo. App.1944). We recognize, however, that the exact place where plaintiff came into a position of immediate peril is for the jury to determine. Burns v. Maxwell, *supra*, 418 S.W.2d at 140. Nevertheless, it is the duty of a motorist entering an intersection to exercise the highest degree of care and to maintain a careful lookout ahead. Nor is this duty fulfilled by obeying a traffic signal and then proceeding into the intersection without making careful observations to determine whether there is no cross traffic in or so near to the intersection as to constitute an immediate danger. Schmittzehe v. City of Cape Girardeau, 327 S.W.2d 918, 923[4] (Mo.1959).

In the instant case, defendant's average speed as he traversed the 50 to 72 feet to the point of collision was approximately 8.5 miles per hour or 12.5 feet per second. We realize that average speed and a known distance can only furnish an approximation in computing time. It is also fair to recognize that the initial rate of defendant's acceleration from his stopped position probably was greater than the last, since it is unlikely that a uniformly accelerated rate was maintained. Schmittzehe v. City of Cape Girardeau, *supra* at 922. Therefore, even if we assume that defendant traveled at a greater average speed of 10 miles per hour or 14.7 feet per second for a distance of 72 feet, it would take defendant approximately 4.9 seconds to travel from his stopped position to the point of impact. During this time, plaintiff's vehicle was proceeding across the intersection at 15 to 20 miles per hour. At 15 miles per hour her vehicle was traveling at a rate of 22 feet per second. Since plaintiff's vehicle had almost cleared Arsenal Street, plaintiff needed less than one second to escape the collision. Defendant's reaction time being judicially known at three-quarters of a second, Vietmeier v. Voss, 246 S.W.2d 785, 788[5] (Mo.1952), the jury could have found that defendant would still have had more than 61 feet to reduce his speed and a span of time before reaching the point of collision of at least four seconds. Under these circumstances, the trial court properly submitted humanitarian negligence. Burns v. Maxwell, *supra*, 418 S.W.2d at 141[5].

We now consider the instructions, the giving of which is the basis of an order granting a new trial. For the plaintiff-wife the court gave Instruction No. 2, an MAI No. 17.15, disjunctively submitting defendant's humanitarian negligence in failing to stop or slacken his speed and hypothesizing the plaintiff-wife's damage. For the plaintiff-husband the court gave Instruction No. 4, an MAI No. 17.15, identical to Instruction No. 2 except that it hypothesized the husband's damage. On the other hand, the court gave two MAI No. 33.06(2) instructions for the defendant. Instruction No. 3 read: "Your verdict must be for defendant on the claim of Marie Joggerst unless you believe that at the moment defendant first knew, or by using the highest degree of care could have known, of said plaintiff's position of immediate danger, defendant then had enough time by using such care to have avoided injury to said plaintiff by either stopping or slackening his speed." Instruction No. 5 was identical to Instruction No. 3 except that it conversed the plaintiff-husband's verdict director. Defendant contends that he was entitled to converse each plaintiff's verdict director even though each submitted the same theory of recovery. We disagree.

Directly on point with the case at bar is the illustration of MAI No. 35.05(5), where plaintiffs wife and husband submit on the same theory of recovery and the defendant properly converses the plaintiffs' submissions with a single converse instruction. Consistent with such illustration is the holding that MAI authorization of multiple converse instructions is applicable only to the conversing of submissions of multiple theories of recovery and not to submissions on the same theory of recovery in behalf of different parties plaintiff. Brown v. Jones Store, 493 S.W.2d 39, 42[6, 7] (Mo.App.1973); Murphy v. Land, 420 S.W.2d 505, 507[1, 2] (Mo.1967). The case of Watterson v. Portas, 466 S.W.2d 129 (Mo.App.1971) is similar to the instant case, the only difference being that there a minor and his parents as plaintiffs submitted primary negligence. The court gave separate verdict-directing instructions for plaintiffs on the same theory of recovery. For the defendant the court gave separate instructions conversing the same element of each plaintiff's verdict director. We there held "that where co-plaintiffs' verdict-directing instructions submit the same theory of recovery and defendant desires to converse the same element or elements of each verdict director, the defendant is entitled to only one converse instruction, as

illustrated by Instruction No. 5 of MAI 35.05." Watterson v. Portas, *supra* at 132. Accordingly, the trial court here properly granted plaintiffs a new trial for erroneously submitting to the jury defendant's two converse instructions.

The trial court's order granting plaintiffs a new trial is affirmed and the cause is remanded.

DOWD, C. J., and KELLY, J., concur.