**Guiseppe RISCALDANTE, Appellant,**

v.

**Joseph MELTON, Respondent.**

No. 69006.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 23, 1996.

**900**

Joseph A. Frank, The John A. Frank Partnership, St. Louis, for appellant.

1. Plaintiff testified his vehicle may have been on

Samuel I. Vandover, Godfrey, Vandover & Burns, St. Louis, for respondent.

Before GERALD M. SMITH, P.J., and GARY M. GAERTNER and RHODES RUSSELL, JJ.

PER CURIAM.

Appellant, Guiseppe Riscaldante (hereinafter "plaintiff"), appeals the judgment of the Circuit Court of the City of St. Louis denying his motion for a new trial after a jury apportioned fault between respondent, Joseph Melton (hereinafter "defendant"), and plaintiff in plaintiff's personal injury action. We affirm.

On October 28, 1989 at 2:55 a.m., plaintiff was injured in a two-car collision involving his car and the vehicle driven by defendant at the intersection of Hampton and Southwest Avenues. Hampton Avenue is a two-way street with three northbound and three southbound lanes. Southwest Avenue is a two-way street with two eastbound and two westbound lanes.

Plaintiff contends he traveled southbound on Hampton Avenue in either the middle lane or far right lane at a speed of thirty to thirty-five miles per hour.[1] He testified upon reaching the flashing yellow traffic signal at Southwest Avenue, he proceeded through the intersection. As he entered the intersection plaintiff noticed defendant's vehicle approaching from the east approximately fifteen to eighteen feet (one car length) away. Plaintiff testified he swerved his vehicle and sounded his horn, but was unable to avoid colliding with defendant's vehicle.

Plaintiff presented the testimony of Michael McDermott, an accident analyst and investigator. Plaintiff hired McDermott to photograph and measure the intersection of the collision. McDermott testified that a vehicle traveling thirty-five miles per hour would travel 256 feet in the time it took defendant's vehicle, traveling at five miles per hour, to reach the collision point. He also testified that a vehicle traveling fifty

cruise control at the time of collision.

miles per hour would travel 365 feet in the time it took defendant's vehicle, traveling five miles per hour, to reach the collision point. Based on his photographs, McDermott further testified that plaintiff would have had no problem seeing defendant's vehicle travel west across the center line into the southbound lanes of Hampton Avenue.

Defendant contends he traveled westbound on Southwest Avenue in the lane nearest the center line. As he approached the intersection, defendant faced a flashing red traffic signal. Defendant testified he stopped his vehicle at the flashing red signal, looked in both directions, and viewed no other vehicles traveling south on Hampton Avenue for one-half block. According to defendant, bushes and an advertisement sign obstructed his view of any southbound traffic more than one-half block away. Defendant testified he then proceeded into the intersection at a speed of five miles per hour.

Before the collision occurred, defendant saw plaintiff's vehicle approaching at a distance equivalent to the width of three lanes of traffic. At that point defendant's vehicle had reached the center line of Hampton Avenue. In his testimony, defendant estimated plaintiff's speed at fifty miles per hour.

The collision occurred either in the middle or the far right southbound lanes of Hampton Avenue. Plaintiff contends he was almost completely through the intersection when his vehicle was struck by defendant's vehicle. Defendant contends he had crossed the center line of Hampton Avenue when plaintiff struck the right front quarter panel of his vehicle.

Christopher Dabin, defendant's passenger, testified defendant was traveling westbound on Southwest Avenue in the lane nearest the center line. He further testified defendant came to a complete stop at the flashing red signal, looked in both directions, and then moved from a stopped position at an estimated speed of five miles per hour. According to his testimony, Dabin noticed plaintiff's vehicle approximately three car lengths away as defendant proceeded into the intersection. Dabin estimated plaintiff's speed at fifty miles per hour.

On February 14, 1992, plaintiff filed a petition with the circuit court alleging he sustained personal injuries as a result of defendant's negligent operation of his vehicle. A three-day jury trial took place. At the close of evidence, defendant filed a motion for a directed verdict. The trial court denied defendant's motion. At the instruction conference, plaintiff objected to an instruction on failure to keep careful lookout offered by defendant on the ground sufficient evidence did not exist to support its submission.[2] The trial court overruled plaintiff's objection.

On June 21, 1995, the jury returned a verdict in favor of plaintiff. The jury apportioned defendant's fault at sixty-five percent and plaintiff's fault at thirty-five percent. The jury awarded plaintiff personal injury damages in the amount of $50,000. The trial court entered judgment in favor of plaintiff and against the defendant in the amount of $32,500. Plaintiff filed a motion for a new trial which the trial court denied on August 25, 1995. This appeal followed.

■ In his motion for new trial and here on appeal, plaintiff contends the trial court erred in submitting an instruction on failure to keep a careful lookout. When reviewing whether an instruction was supported, the evidence is considered favorably to defendant with a disregard for plaintiff's evidence unless it tends to support the submission. *Rickman v. Sauerwein*, 470 S.W.2d 487, 489 (Mo.1971).

---

**2.** Defendant's submitted instruction, modeled on MAI 32.01(2), reads as follows:

In your verdict you must assess a percentage of fault to plaintiff, Guiseppe Riscaldante, if you believe:

First, either plaintiff failed to keep a careful lookout, or plaintiff drove at an excessive speed, and

Second, plaintiff in any one or more of those respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause the damages Mr. Riscaldante claims to have sustained.

We find defendant was entitled to an instruction on the issue of failure to keep a careful lookout. A motorist entering an intersection is under a duty to exercise the highest degree of care to maintain a careful lookout in both forward and lateral directions. *Witt v. Peterson,* 310 S.W.2d 857, 860 (Mo.1958). This duty is not fulfilled by "obeying a traffic signal and then proceeding into the intersection without making careful observations to determine whether there is no cross traffic in or so near to the intersection as to constitute an immediate danger." *Joggerst v. O'Toole,* 513 S.W.2d 722, 724 (Mo. App.St.L.D.1974). Here, defendant, the party seeking the instruction, had the burden to show plaintiff, had he been keeping a careful lookout, could have reacted in time to avoid the accident. *Wendt v. General Acc. Ins. Co.,* 895 S.W.2d 210, 216 (Mo.App. E.D. en banc 1995). In other words, to make a submissible case on failure to keep a careful lookout, there must have been evidence plaintiff saw or could have seen defendant in time to have avoided the collision. *Cypret v. Templeton,* 912 S.W.2d 630, 632 (Mo.App. E.D.1995).

Defendant may make a submissible case on plaintiff's failure to keep a careful lookout using circumstantial evidence. *Williams v. M.C. Slater, Inc.,* 590 S.W.2d 357, 359 (Mo.App. E.D.1979). It is sufficient to show that plaintiff *reasonably* could have seen danger of collision with defendant in time to have taken evasive action. *Id.* While defendant did not produce evidence that plaintiff had the physical means to stop, slow, or swerve his vehicle, defendant can rely on plaintiff's evidence. *Id.*

In the present case, plaintiff's own evidence establishes plaintiff could have seen the danger of collision with defendant's vehi-cle in enough time to take evasive action. First, plaintiff testified he noticed defendant's vehicle fifteen to eighteen feet (one car length) from the intersection. Second, McDermott's photographs, admitted into evidence, showed plaintiff's clear and unobstructed view of the intersection from a distance of two hundred feet. In addition, McDermott testified in order for the collision to have occurred in either the middle or far right southbound lanes of Hampton Avenue, defendant's car had to cross at least four or five lanes of Hampton prior to the collision, while plaintiff's vehicle had to cross only one lane of Southwest Avenue. Third, McDermott testified that, provided plaintiff was keeping a careful lookout, he had clear visibility of the intersection from the east curb to the west curb of Hampton Avenue from two-hundred feet away and should have been able to see defendant's vehicle proceed westbound more than halfway across Hampton Avenue.[3] Finally, McDermott testified defendant would have traveled forty-four to fifty-four feet from the stop line at Hampton Avenue to the point of impact in approximately five seconds. According to McDermott, if plaintiff was traveling thirty-five miles per hour, as he testified, his vehicle would have traveled 256 feet in same five seconds. It is possible that, had plaintiff been keeping a careful lookout, he could have seen defendant move into the intersection as he was at least 256 feet north of the point of impact. A swerve or reduction in speed at this distance would have prevented the collision.

Plaintiff's testimony that he was looking carefully and did not see defendant's vehicle stopped at the intersection or see him moving into the intersection until "a car length before impact" does not preclude the submission of a lookout instruction.[4] The

---

3. When asked by defendant's counsel on cross-examination whether any obstacle prevented plaintiff from viewing the intersection, plaintiff responded, "At that time, sir, I didn't look. I had a yellow and I was going."

4. In his brief, plaintiff repeatedly asserts submission of the lookout instruction is erroneous because he did not see defendant's vehicle until "a car length before impact." However, the issue here is not whether plaintiff actually saw defendant's vehicle in time to have avoided the accident. Rather, the issue here is whether plaintiff *could have seen* defendant's vehicle in time to have avoided the accident. *Cypret,* 912 S.W.2d at 632.

jury could have disbelieved his testimony that he was looking carefully and concluded otherwise through reasonable inferences from the evidence. A jury also could have reasonably believed an earlier swerve or reduction in speed would have prevented the collision. The evidence merited the submission of a lookout instruction and, therefore, the trial court did not err.

Based on the foregoing, the judgment of the trial court is affirmed.