AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Plaintiff,

v.

Gary L. ROBBINS, et al.,
Defendants/Respondents,

and

Kenneth Rohrer, Defendant
Ad Litem/Appellant.

No. 70118.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 6, 1997.

---

1. This opinion does not reach the question of whether an ALJ has a property right to continued employment.

James Parker Lemonds, St. Louis, for plaintiff/appellant.

David L. Mayhugh, Park Hills, Kurt D. Breeze, Festus, John Dennis Rayfield, Crystal City, Joseph S. Sanchez, Festus, for defendants/respondents.

CRAHAN, Presiding Judge.

Defendant Ad Litem Kenneth Rohrer ("Defendant") on behalf of Carl A. Retzer ("Deceased") appeals from the trial court's judgment following a bench trial assessing 50% fault to Deceased in an automobile accident. On appeal, Defendant asserts that the trial court erred in assessing 50% fault to Defendant because there was no substantial evidence to support the trial court's implicit determination that Deceased either failed to keep a careful lookout or crossed the center line. We reverse and remand.

Neither party requested findings of fact or conclusions of law and none were issued by the trial court. We must therefore assume that the trial court resolved all issues of fact in accordance with the result reached. Rule 73.01(a)(3); *Nelson v. Baker*, 776 S.W.2d 52, 53 (Mo.App.1989). Further, the evidence adduced at trial must be reviewed in the light most favorable to the prevailing party. *Id.*

At approximately 11:00 p.m. on September 9, 1991, a fatal collision occurred on Old Highway 67 in St. Francois County, Missouri. One vehicle, a 1990 Mazda pick-up truck operated by Gary L. Robbins ("Robbins"), was headed north. Robbins was alone in the vehicle. The other vehicle, a 1984 Chevrolet Chevette operated by Deceased, was headed south. Three passengers

also occupied Deceased's car. They were Lawrence W. Barton, John H. Patrick, and Carl Stokes. Robbins and Lawrence W. Barton were the only survivors of the accident.[1]

This case was initially filed as an interpleader action by American Family Mutual Insurance Company, Robbins' liability carrier, seeking leave to deposit its $100,000 coverage into the registry of the court. Thereafter, cross-claims were filed against Deceased by Robbins for personal injuries, Lawrence W. Barton for personal injuries, Verna Patrick (John H. Patrick's mother) for wrongful death, and Ruth Stokes (Carl Stokes' mother) for wrongful death ("Respondents"). The cross-claims alleged *inter alia* that Deceased was negligent in failing to keep a careful lookout or in crossing the center line into Robbins' lane.

Old Highway 67 is a dark two-lane asphalt road with no center line. The road measures 20 feet to 20 feet 6 inches in width. There is no lighting for the road and its shoulder consists of grass and gravel. On that night, the road was dry and the speed limit was 55 m.p.h.

At the point of collision, the road is straight with a 4% grade sloping from north to south. The shoulder bordering Deceased's lane consists of an 8 to 9 foot unimproved grass area ending in a grassy ditch. There is a curve in the roadway approximately 300 to 400 feet north of where the collision took place. Deceased's car was traveling around this curve at an undetermined point in time prior to the collision.

Only two witnesses testified at trial. They were Robbins and Officer Rusty Ridge ("Officer"). According to Robbins, he was at a friend's house earlier that evening eating dinner and playing pool. There he consumed 2 to 3 twelve-ounce 5 percent beers approximately 30 to 45 minutes prior to the accident. From the friend's house Robbins drove to Footloose, a bar located one or two miles from the accident scene, to see if a friend had his cigarettes and lighter. He spent approximately 30 minutes there and consumed one-half of a twelve-ounce 5 percent beer. He

had his last drink of beer right before he left the bar which was 10 to 15 minutes before the accident.

Robbins testified he left the bar and was driving north on Old Highway 67 at approximately 50–55 m.p.h. when he noticed headlights coming around the corner toward him "in the trees." He could not tell if the headlights were on their half of the road so he decided to move closer to the right-hand side of the road giving the other vehicle room to pass. Although it was not his intention, the right side of his truck fell off the traveled portion of the road and onto the shoulder.

Robbins did not know how long the right side of his truck traveled on the shoulder. He believed the collision occurred at the point when he had just eased his truck back onto the roadway as a result of Deceased having crossed over into his lane. Robbins denied applying his brakes before the collision and stated that his truck did not skid, spin around or make any other unusual action prior to impact. He had no recollection where the vehicles collided. After the accident, Robbins' blood-alcohol content measured at least .06.

At the time of trial, Officer had been a highway patrol officer for 22 years and had extensive training in accident reconstruction. Officer's version of the events leading up to the accident was based on physical evidence obtained at the accident scene. Officer's conservative estimate of Robbins' speed at the point where the right side of his truck left the roadway was 67 m.p.h. Measurements at the scene indicated that the right side of Robbins' truck traveled on the shoulder for approximately 170 feet and the truck was in a "yawing motion" while driving partly on and partly off the roadway. A "yawing motion" occurs when the rear tires travel outside the front tires.

Officer testified that Robbins' speed would have decreased somewhat as a result of the "yawing motion" but Officer could not determine the resulting speed. Officer also could not determine the speed at which Deceased was traveling or the speed of the vehicles at the point of collision. Furthermore, Officer could not determine the location of Deceased's car when Robbins' truck left the

---

1. Robbins pled guilty to three counts of involuntary manslaughter.

road, engaged in the "yawing motion," or came back onto the road.

Officer found a skid mark made by the left front tire of Robbins' truck. The skid mark measured 43 feet in length. It began 13 feet from the shoulder of Deceased's lane and ended 6 feet 10 inches from the same shoulder, terminating at the point of collision. The width of the entire road measured 20 feet to 20 feet 6 inches. Officer testified that skid marks are made by tires locking up and sliding on the road. Officer also found a scuff mark made by the passenger-side rear tire of Robbins' truck. Officer testified that scuff marks are made by tires that are rotating and sliding leaving striations. Officer observed significant gouge marks at the end of the skid mark. Officer testified that gouge marks occur at the point of collision as the under-carriage of the vehicle digs out the road through the dissipation of kinetic energy. The gouge marks were approximately 3½ to 4 feet from the point where Deceased's lane meets the shoulder.

Officer concluded that the physical evidence taken at the accident scene indicated that Deceased had operated the car down the middle of Deceased's lane at all times but at least the front portion of Robbins' truck was in Deceased's lane when the collision occurred. By examining the condition of the vehicles after collision, Officer determined that the front passenger-side portion of Robbins' truck struck the driver's side of Deceased's car. This occurred while the truck was in the "yawing motion." Officer based this conclusion on the fact that the entire front portion of Robbins' truck was pushed to the driver's side. Officer estimated that Robbins' truck collided with Deceased's car at a 45 degree angle or more. At impact, Deceased's car (which had been traveling south) was spun 180 degrees clockwise and came to rest facing back to the north. Robbins' truck spun counter-clockwise and its front end came to rest on the shoulder next to Robbins' lane.

Officer determined that no portion of Deceased's car was inside Robbins' lane at the point of impact. Officer could not determine if any portion of Deceased's car was on the shoulder at the point of impact or if, had Deceased pulled off the road and onto the shoulder by 3 feet, the collision could have been avoided. Officer did testify that, although there were no physical marks on the road indicating that Deceased swerved to avoid collision, the location of the damage to Deceased's car led officer to believe that it was possible that Deceased had swerved at the very last instant to avoid collision.

The trial court found Deceased 50% at fault without specifying the basis for its finding. Judgment was entered against Deceased in the following amounts: $12,500 to Robbins; $125,000 to Lawrence W. Barton; $25,000 to Verna Patrick; and $25,000 to Ruth Stokes.

■ The judgment in a court-tried case will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We find that the trial court's assessment of 50% fault to Defendant was not supported by substantial evidence.

■ To make a submissible case for failure to keep a careful lookout, substantial evidence, not speculative deductions, must show that the driver had sufficient time and distance, considering the movements and speed of the vehicles, to take effective action to avoid a collision. *Hughes v. Palermo,* 911 S.W.2d 673, 674–75 (Mo.App.1995). A duty to swerve or to take other evasive action does not arise, in the case of oncoming traffic, until driver knows or should know of the likelihood that the opposite vehicle will invade the wrong side of the roadway. *Hollis v. Blevins,* 927 S.W.2d 558, 565 (Mo.App. 1996). After carefully reviewing the record, we can find no testimony or evidence establishing the distance between the two vehicles when Robbins' truck entered Deceased's lane and the time that elapsed between the moment Robbins' truck entered Deceased's lane and collision. Thus, any conclusion that Deceased had time to take evasive action after Robbins entered his lane would be based solely on speculation. *Id. See also, Wendt v. General Accident Ins. Co.,* 895 S.W.2d 210, 216 (Mo.App.1995); *Stevens v. Kliethermes,* 811 S.W.2d 447, 450 n. 3 (Mo.App.1991). There was absolutely no evidence presented regarding the location of Deceased's car prior to impact or its speed. Without such

evidence, there is no way to gage the amount of time Deceased had to react.

 Respondents urge that the trial court could have inferred that had Deceased realized that Robbins' truck was partly on and partly off the road or engaging in a "yawing motion" he should have perceived danger in that motion and been alerted to take evasive action. Officer testified, however, that he could not say with a reasonable degree of certainty that had Deceased been aware of Robbins' activity he should have perceived danger in that activity. Moreover, in order to be found negligent for failing to keep a careful lookout there must be substantial evidence that had the driver kept a careful lookout he could have seen the other vehicle in time to have taken effective precautionary action to *avoid* the collision. *Riscaldante v. Melton,* 927 S.W.2d 899, 902 (Mo.App.1996) (emphasis added). We find no evidence to support the inference that the accident could have been avoided had Deceased swerved sooner. Officer testified that he could not say with a reasonable degree of certainty that had Deceased swerved 3 feet onto the shoulder he would have avoided the accident.

Alternatively, Respondents contend that the trial court attributed 50% fault to Deceased because it believed Robbins' testimony that Deceased entered Robbins' lane rather than Officer's testimony that Robbins entered Deceased's lane. In fact, Robbins never testified unequivocally that he observed Deceased's vehicle to be in his lane prior to the collision. Robbins initially testified that he saw lights "up around the corner" coming "my direction," which he later clarified to mean in a southerly direction. He never saw the vehicle, only its lights. After he got off the side of the road, he was "concentrating more on getting back onto the road than where and how the other vehicle was coming." Robbins further stated "[as far as I could tell, it *may have been* on my—it was on my side of the road.]" Later, he clarified his statement as follows:

Q. At any time prior to the collision, did you observe anything about the other headlights?

A. That they were coming in my direction and *possibly could have been* on my side of the road. Other than that, none. (emphasis added).

 We hold that this speculation by Robbins cannot be considered substantial evidence that Deceased was on the wrong side of the road, especially in view of the uncontroverted evidence of skid marks and gouge marks establishing that the collision occurred entirely in Deceased's lane. "It has long been the rule [in Missouri] that where testimony is, beyond any reasonable doubt, contrary to established physical facts or laws and facts of common knowledge, it cannot be accepted as substantial evidence. And if the testimony of a witness upon a material issue is inherently impossible, or is so opposed to all reasonable probability as to be manifestly false, the courts are not bound to accept it and will wholly disregard it." *Black v. Kansas City Southern Railway Co.,* 436 S.W.2d 19, 29 (Mo. banc 1968). This record does not support a finding that Deceased crossed the center line.

We reverse the judgment assessing 50% fault to Defendant and remand for entry of a new judgment consistent with this opinion.

GRIMM and HOFF, JJ., concur.