**John E.J. WELLMAN and Lois Wellman, Plaintiffs/Appellants,**

**v.**

**Alvin J. WEHMEYER, Defendant/Respondent.**

No. 71625.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 1997.

Application for Transfer Denied
May 26, 1998.

David M. Duree, St. Louis, for plaintiffs/appellants.

Robbye Hill Toft, St. Louis, for defendant/respondent.

CRAHAN, Chief Judge.

Plaintiff John Wellman ("Pedestrian") and his wife Lois appeal the judgment entered on a jury verdict returned in favor of Defendant ("Driver") in Pedestrian's suit for negligence arising out of an automobile accident.

Early in the morning of December 13, 1994, Pedestrian left his home to walk to the bus stop. He walked approximately five blocks to the intersection of Big Bend Road and East Glenwood where he intended to cross the street to the bus stop on the opposite side of Big Bend. Big Bend runs east and west with two lanes of traffic traveling in each direction. Pedestrian was on the north side of Big Bend and the bus stop was on the south side. As he crossed Big Bend, Pedestrian stopped to allow some eastbound traffic, which traveled on the south half of Big Bend, to pass. Pedestrian claimed he stopped near the double yellow line which divided the eastbound lanes from the westbound lanes. Michael Maruska ("Witness") was driving east on Big Bend and observed Pedestrian. He claimed Pedestrian stopped in the center of the inner westbound lane on Big Bend. While Pedestrian was waiting for eastbound traffic to pass, Driver struck him while driving in the inner westbound lane of Big Bend.

The jury returned a verdict in favor of Driver, assessing one hundred percent of fault to Pedestrian. This appeal followed.

In his first point, Pedestrian claims the trial court erred in admitting certain photographs of the accident site because they did not accurately show how the accident scene appeared on the morning of the accident.

The admission of photographs, being within the discretion of the trial court, will not be disturbed on appeal absent an abuse of discretion. *State ex rel. Missouri Hwy. and Transp. Com'n v. Vitt*, 785 S.W.2d 708, 712 (Mo.App.1990); see also *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). That a photograph of a location was taken before or after an event and before or after changes occurred does not render it inadmissible if the extent of the changes is explained. *Vitt*, 785 S.W.2d at 712; *see also Matthews v. City of Farmington*, 828 S.W.2d 693, 697–98 (Mo.App.1992) (photographs of accident scene admissible although relation of trees and power lines had changed when such changes were discussed); *Hritz by Hritz v. Slawin*, 706 S.W.2d 296, 297 (Mo.App.1986) (photographs of accident scene admissible al-

though car pictured differed from that involved in accident and that and other discrepancies were explained).

■ In the present case, Pedestrian complains that the accident scene photographs were taken three hours earlier in the morning than when the accident took place and that the photographs did not include headlight illumination. The photographer, who had personally observed the light conditions at the scene exactly one year after the accident, testified that the only difference in the light between 6:30 a.m. and 3:30 a.m. on the date in question might have been the view to the east, where dawn's early light may have been visible. He further testified that this did not influence the amount of light falling on any subject matter or the pavement. Furthermore, this possible difference between the amount of available light, as well as the absence of headlights, was fully explained to the jury. The trial court carefully scrutinized all of the available photographic evidence and excluded much of it on the ground that the potential prejudice outweighed its probative value. The trial court concluded, however, that the photographs that were admitted could help the jury gain a fundamental understanding of Driver's perspective of the accident scene despite their differences from the scene as it actually appeared to him. We find no abuse of discretion. Point denied.

■ In his second point, Pedestrian objects to various passages of the testimony given by Driver's expert witness ("Expert"). Expert discussed his background and training which established his expertise in accident investigation. Pedestrian acknowledged Expert's ability to discuss the general physical properties affecting the accident. Pedestrian claims that various portions of Expert's testimony were factual statements rather than general expert knowledge and that Expert discussed factual scenarios which were contradicted by the undisputed facts of the case. The decision whether to admit or exclude expert testimony is within the discretion of the trial court and will be overturned only if that discretion has been manifestly abused. *Inman v. Bi–State Development Agency*, 849 S.W.2d 681, 683 (Mo.App.1993).

At the outset, we note that Pedestrian has improperly attempted to present what are really a number of discrete claims of error in a single point relied on in violation of Rule 84.04. *Biever v. Williams*, 755 S.W.2d 291, 293 (Mo.App.1988); *Carroll's Warehouse Paint Stores, Inc. v. Rainbow Coatings Corporation*, 835 S.W.2d 531, 532 (Mo.App.1992). Nevertheless, in the exercise of our discretion, we will do our best to review them.

Pedestrian complains that the trial court improperly allowed Driver's expert to offer evidence that Driver was unable to see Pedestrian because of the glare from the headlights from oncoming traffic. Pedestrian urges that such testimony was impermissibly at odds with Driver's testimony that he did not notice any oncoming, eastbound automobiles. Pedestrian also urges that it was improper for Driver's expert to testify about the habit of pedestrians to cross a road one lane at a time. Pedestrian claims that his testimony was impermissibly at odds with Driver's testimony that he did not see Pedestrian until he was stationary in Driver's lane immediately prior to impact.

■ Pedestrian's contentions misconstrue the purpose of expert's testimony, which was offered on the subject of causation, not what Driver did or didn't see. To make a submissible case for failure to keep a careful lookout, substantial evidence, not speculative deductions, must show that the driver had sufficient time and distance, considering the movements and speed of the vehicle, to take effective action to avoid a collision. *American Family Mut. Ins. Co. v. Robbins*, 945 S.W.2d 52, 55 (Mo.App.1997). A duty to take such evasive action does not arise until the driver knows or should know of the likelihood that the plaintiff will be in a position of danger if such action is not taken. *Id.*

In this case, both Pedestrian and Witness testified that there were, in fact, a number of vehicles traveling in an eastbound direction with their headlights on at the time of the accident. The fact that Driver did not notice them is evidence that he was either inattentive or was looking somewhere other than directly ahead as he proceeded in a west-

bound direction in the inner westbound lane. This does not, however, establish that Driver's failure to keep a careful lookout was the cause of the accident. In order to establish whether Driver's inattentiveness was the cause of the accident, the jury was required to determine whether, if Driver had properly been paying attention, he would have seen Pedestrian and should have recognized the danger to him in time to take evasive action to avoid the collision. This was the issue addressed by Expert's testimony.

■ Expert did not attempt to prove that Driver was, in fact, blinded by the glare from oncoming headlights. From the record before us, it cannot be determined whether Driver was looking somewhere other than ahead of his vehicle, or had allowed his mind to wander, or even had his eyes closed. The point of Expert's testimony was that, if Driver had been looking ahead of his vehicle as the law requires, his ability to see Pedestrian would have been impaired by the glare of oncoming lights.[1] Further, although Driver did not actually see Pedestrian until just before impact, it was relevant for the jury to consider whether, if Driver had seen Pedestrian walk into the outside lane and pause before entering his lane, he should have anticipated that Pedestrian was going to proceed into his lane and stop there. Witness's testimony that Pedestrian had indeed proceeded in that manner provided the evidentiary basis for Expert's opinion on that topic. Thus, Expert's opinion was relevant and admissible on the issue of when, if Driver had been keeping a careful lookout, he should have realized the danger to Pedestrian in time to have taken evasive action. If, due to the glare and experiential factors cited by Expert, Driver, although keeping a careful lookout, would not have perceived the danger to Pedestrian in time to have taken evasive action to avoid the accident, his failure to keep a careful lookout cannot be said to have been the cause of the accident. We find no

error in the admission of Expert's testimony on these subjects.

■ In a somewhat different complaint asserted under this point, Pedestrian urges that Expert was improperly allowed to testify as to differences in perception of eastbound and westbound drivers due to the existence of shadows. From our reading of the evidence, this testimony was based on Driver's Exhibit B, which we have previously held was properly admitted into evidence. Further, Expert testified that he was highly familiar with the location of the accident, having lived in the area and traveled through the intersection on a frequent basis. An expert witness is allowed to testify "upon matters within his personal knowledge or observation, upon competent guidance in the case, or upon both." See State ex rel. Division of Family Services v. Guffey, 795 S.W.2d 546, 551 (Mo.App.1990). We find no error in the admission of this testimony. Point denied.

■ In his third point, Pedestrian again improperly asserts several different theories of error in connection with closing arguments. It is important to note initially that counsel are given wide latitude in closing argument in suggesting inferences from the evidence. Moore v. Missouri Pacific R. Co., 825 S.W.2d 839, 844 (Mo.1992).

First, Pedestrian claims the trial court abused its discretion when it sustained Driver's objection to his closing argument that Driver could have swerved to avoid the collision but allowed Driver to argue that Pedestrian could have walked 245 feet down to the crosswalk. Essentially, Pedestrian argues that, because Driver got to make his "crosswalk" argument, he should have been permitted to make his "swerve" argument.

■ Driver's theory of the case was that Pedestrian was negligent in failing to yield the right-of-way to an oncoming vehicle while not within a crosswalk. The proximity of the

---

1. The dissent's claim that the expert testimony about headlight glare was without foundation fails to take into account the testimony of Pedestrian and Witness, both of whom testified that there were several cars proceeding in an eastbound direction with their headlights illuminated. Driver testified that he didn't notice any

oncoming cars, not that there were none. Further, contrary to the dissent's observations about the permissibility of accident reconstruction testimony, Pedestrian's only objection to the testimony on appeal was that it was "at variance with Defendant's testimony," not that it was impermissible accident reconstruction testimony.

crosswalk within which Pedestrian would have had the right-of-way is relevant to whether or not Pedestrian was negligent. However, Pedestrian's theories of the case were that Driver was negligent either because he failed to keep a careful lookout or because he was driving at an excessive speed. Driver did not plead or submit on failure to swerve. Moreover, Driver's expert, the only witness to testify about the possibility of swerving, opined that it would have required more time and distance to execute such a maneuver than stopping. Therefore, Pedestrian's "swerve" argument was not supported by the evidence[2] and the trial court did not abuse its discretion in sustaining Driver's objection.[3]

Second, Pedestrian argues that the trial court should not have allowed Driver's arguments about (1) the prejudice jurors might have against Driver and (2) why Pedestrian had not produced photographs of the accident scene.

In closing argument Driver asked the jury: "Do you think, ladies and gentlemen, that we'd be here in a trial on this case if every single fact were the same, the distance, the lighting, the clothing Mr. Wellman [Pedestrian] was wearing, the speed at which he was walking, the speed at which the cars were approaching and the only thing different is if we had Alvin Wehmeyer [Driver] as the witness and Mike Maruska [Witness] as the driver who hit him.

[Pedestrian's counsel]: Judge, object, your honor, that's improper argument.

THE COURT: Overruled.

[Driver's counsel]: Because what they have is prejudice. The feeling that many of us have that old people shouldn't be out there driving."

Driver was eighty-three years old at the time of the accident and Pedestrian repeatedly referred to that fact on direct

examination of Driver. Driver apparently suggested to the jury that age bias should not affect their analysis of the case by asking them to consider how the same accident would be perceived if Driver was younger. Moreover, Driver continued to make this same argument more explicitly without objection from Pedestrian. We find no abuse of the trial court's broad discretion.

Driver went on to argue:

"Look at the pictures. There are shadows. Don't you think if a photograph would show that [Driver's] headlights illuminated where [Pedestrian] was, they would have a picture of that?"

Pedestrian had argued that Driver's pictures of the accident scene did not accurately depict Driver's view because headlight beams were absent. Driver merely responded by offering the jury an explanation, other than his intent to deceive them, why his pictures did not perfectly reproduce Driver's perspective of the accident scene.

The liberal attitude indulged by the law toward argument is particularly significant when an argument is a fair retort to arguments made by an opponent. *Titsworth v. Powell*, 776 S.W.2d 416, 420 (Mo.App. 1989). Considering the arguments raised and evidence adduced by opposing counsel and the nature of the court's control over arguments, the admission of Driver's retaliatory statements was not erroneous. See *Barlett by and through Barlett v. Kansas City Southern Ry. Co.*, 854 S.W.2d 396, 401 (Mo. banc 1993).

Third, Pedestrian complains that Driver misstated the law when he told the jury that "in order for you to find against [Driver], they have to— it's their burden to show to you that his headlights illuminated Mr. Wehmeyer [sic][4] in his lane and [Driver's] lane for a least a hundred eight feet." This argument addressed Pedestrian's claim

2. Likewise, there is not a scintilla of evidence to support the dissent's suggestion that swerving or any other action by Driver would have lessened the damages suffered by pedestrian.

3. In addition, we note that Pedestrian was able to make his "swerve" argument later without objection from Driver.

4. It seems that counsel said "Mr. Wehmeyer" [Driver] but meant to say "Mr. Wellman" [Pedestrian].

that Driver failed to keep a careful lookout. A plaintiff pursuing this theory of liability has the burden to show that Driver, had he been keeping a careful lookout, could have reacted in time to *avoid* the accident. *Riscaldante v. Melton,* 927 S.W.2d 899, 902 (Mo. App.1996) (emphasis added). The only evidence adduced at trial with respect to stopping distances showed that, depending on Driver's personal reaction time, between one hundred eight (108) feet and two hundred sixty-two (262) feet was needed for Driver to see Pedestrian, apply his brakes, and stop his vehicle before colliding with Pedestrian. From this evidence, the jury could infer that, unless Pedestrian was visible to Driver for at least one hundred eight feet, Driver would have been unable to safely avoid a collision whether or not he kept a careful lookout. Therefore, Driver's statement about Pedestrian's burden with respect to the lookout instruction was not a misstatement of the law but a fair attempt to apply the uncontested evidence to the law.[5] See *Giddens v. Kansas City Southern Ry. Co.,* 937 S.W.2d 300, 308–09 (Mo.App.1996). It is true that Driver's argument may technically have been incomplete in that it only applied to the lookout submission and not to the excessive speed submission. In context, however, the trial court could properly have concluded that the jury would understand that Driver's counsel was then addressing only the lookout submission. Further, even if, when viewed in isolation, the argument could be considered technically erroneous, Pedestrian was given ample opportunity to clarify the matter and we do not find the error, if any, to have been sufficiently prejudicial to warrant reversal and remand for a new trial.

The judgment is affirmed.

RHODES RUSSELL, J., concurs.

CHARLES B. BLACKMAR, Senior Judge, dissents in separate opinion.

CHARLES B. BLACKMAR, Senior Judge, dissenting.

I am unable to join in the principal opinion because I am persuaded that the trial was impacted by several errors. The errors are prejudicial because the jury clearly could have assigned a percentage of fault to the driver. It is indeed surprising that it found him wholly free from fault when, with good vision, properly operating headlights, and no obstacles in his way, he did not see the pedestrian until the moment of impact. If the trial is free from error the verdict controls, but I find it hard in this context to excuse any error as nonprejudicial.

### 1. Erroneous Instruction in Final Argument

During final argument the driver's counsel argued as follows:

" ... in order for you to find against [driver] they have to ... it's their burden to show to you that his headlights illuminated [pedestrian] in his lane and [driver's] lane for at least a hundred eight feet."

The driver promptly objected, asserting that "that's a misstatement of the law, your honor." The court overruled the objection without comment.

Counsel's assertion is distinctly an instruction on the law, rather than an appropriate argument. It uses the term "burden," which is a legal concept, and presumes to tell the jury what its duties are under the circumstances ("you have to.").

Driver's counsel points to the broad discretion afforded counsel in argument. The contention is inappropriate in the present context because the court has no discretion to condone legal error in argument by overruling a proper and timely objection. *Fox v. Ferguson,* 765 S.W.2d 689, 691 (Mo.App.,

---

**5.** The dissent emphasizes that there was evidence before the jury from which it could have found that Pedestrian was in Driver's lane for several seconds, during which time Driver would have traveled well over 108 feet. This is in no way inconsistent with Driver's argument. The fact that Driver *may* have had over 300 feet to stop and avoid the collision should not preclude Driver from arguing, consistently with the only expert testimony before the jury, that there was no causation unless Pedestrian was visible for at least 108 feet. Further, the argument that Driver would not necessarily have perceived danger until Pedestrian actually entered his lane was likewise consistent with the only expert testimony on the subject and a reasonable inference from the evidence.

1989), citing *Halford v. Yandell,* 558 S.W.2d 400, 412 (Mo.App.1977); *Langdon v. Wight,* 821 S.W.2d 508 (Mo.App.1991). The court, by overruling the objection, implicitly indicates to the jury that counsel properly stated the law.

The court's opinion points to the evidentiary base for driver's argument in the expert testimony that a car traveling 30 miles per hour can be brought to a dead stop in a minimum of 108 feet and a maximum of 262 feet, and holds that the argument was simply a "a fair attempt to apply the uncontested evidence to the law." The court fails to perceive the vice in the instruction, which lies in telling the jury that the driver need consider only the time that the pedestrian was present in front of him in the west center lane ("illuminated [pedestrian] *in his lane and [driver's] lane* ... (emphasis supplied))."

The jury is not so closely confined. There was evidence that the pedestrian paused on the north shoulder of Big Bend until a westbound car passed; crossed the westbound curb lane, consuming two seconds (five feet per second); stopped for two seconds; and then crossed to a point in the center westbound lane, with the crossing consuming at least one second; and then remained standing in the westbound center lane for 3 to 5 seconds. During this time the driver, at 30 miles per hour, would have traversed at least 225 feet (45 times 5) before reaching the point at which the pedestrian was hit, plus 135 to 225 feet before the collision. The argument told the jury that the only material segment of time was the last one just described, plus perhaps one second to cross the north half of the west center lane. The driver's expert testified as follows:

"The first thing that the driver has to do is to perceive there's some kind of hazard, in this case would be a pedestrian that might be ... invading their part of the road."

"The second step once they have perceived that there's a hazard and they make a decision as to doing something about avoiding that hazard is then reacting. And in taking some action, beginning to take some action."

The jury had the responsibility of determining the point at which the driver, in the exercise of the highest degree of care, could and should have noticed the pedestrian and taken action to avoid an accident. It well might have found that the driver could and should have sensed danger as soon as the pedestrian started across the westbound curb lane. The driver testified that his vision was good and his headlights in working order. His expert testified that a moving person was easier to spot than a stationery person. Counsel's "burden" argument, implicitly approved by the court, put restrictions on the jury in excess of the law's requirements. This constituted legal error. The Court's footnote 5 does not answer my concerns because the argument is essentially an instruction. Nor do I see how it is helped by the expert testimony.

I have no quarrel with *Riscaldante v. Melton,* 927 S.W.2d 899 (Mo.App.1996) which, in its emphasis on the authority of juries to determine the facts in accident cases on the basis of their general understanding of the operation of automobiles, seems to support my position as much as it does the court's. I also agree, as exemplified by *American Family Mutual Insurance Company v. Robbins,* 945 S.W.2d 52 (Mo.App.1997), that a plaintiff in a lookout case must show that the defendant could have perceived the danger in time to take remedial action which, according to the driver's expert, might have included stopping, sounding a warning, or swerving. (I disagree with the intimation, elsewhere in the court's opinion, that the pedestrian was precluded from complaining about failure to swerve because he did not plead it. The purpose of a lookout is to be able to take remedial action. Neither the pleading nor the instructions require more specification.) The court also cites *Giddens v. Kansas City Southern Railway Company,* 937 S.W.2d 300, 308–9 (Mo.App.1996) in justification of its conclusions. With respect, I cannot see the slightest bearing of that case on this one.

The argument is also technically erroneous in indicating to the jury that the pedestrian must show that the driver could have completely avoided any collision after he was obliged to take notice. Had the driver been

able to apply the brakes sooner the pedestrian's injuries might have been much less severe. The possibility of minimizing the damage is entirely appropriate in a comparative negligence case. The principal opinions says that there is "not a scintilla of evidence" that any action by the driver could have lessened the damages. It seems obvious that if speed had been checked, the pedestrian would not have been hit so hard.

Missouri Approved Instructions are noted for terse generality. It is entirely proper in, and indeed the function of, closing argument to relate the generalities of the instruction to the facts of the case at hand. Because MAI instructions are so general, however, the court must be alert to attempts by arguing counsel to expand the instructions or to restrict the jury's fact-finding authority. The court below condoned a legally erroneous statement. The error was patent. It is too serious to excuse by referring to other portions of the argument. The trial court might have avoided problems if the judge, rather than overruling the objection, had simply said that "the jury will be guided by the instructions of the court," thereby making it clear that the instructions contained the only law for the jury's guidance. Erroneous legal argument compromises the purpose of MAI and, if the court's opinion is followed, portends a return to the late and, to my perception unlamented, humanitarian doctrine.

### 2. The Photographs

I recognize the authorities cited in the court's opinion, to the effect that the admission of photographs is almost always a matter of discretion for the trial court. This case, however, requires a closer evaluation. The variation in time is not a substantial infirmity, in that there is no indication that the beginning of dawn in the east provided any significant degree of illumination for westbound drivers. Thus that variation could be explained to the jury.

The absence of headlight illumination, however, presents much more of a problem. The photographer agreed with the pedestrian's counsel's propositions that "a camera lacks the sensitivity in determining especially contrasts between darkness and light;" that it

was "very difficult to take a photograph which would accurately depict that contrast;" and that a photograph tended to "show everything as completely black whereas the human eye might see it as a shade." On examining the photographs the scene appears to be very dark indeed and portions of the roadway seem to be invisible because of heavy shade from overhanging trees. I perceive a substantial capacity to confuse rather than to enlighten. See *Simmons v. Shomer*, 395 S.W.2d 507, 514 (Mo.App.1965.)

Exact reproduction is not always essential if variations can be explained. *State ex rel State Highway Commission v. Eilers*, 406 S.W.2d 567 (Mo.1966.) Discretion is broad, but is subject to controls. It cannot reasonably be said that the pictures which do not show illumination by headlights accurately portray the accident scene as delineated in the evidence received at this trial. In contrast to *Eilers*, because of the importance of lighting to this case, the misleading effects cannot be corrected by testimony as to the variations in conditions. The prejudicial effect outweighs any helpfulness to the jury. The defendant argues that it would not be possible to obtain photographs showing the effect of the headlights on the total picture, not only because of traffic problems but also because moving lights in the picture would blur the image. There is, however, no abstract right to use photographs if pictures which do not distort the scene cannot be had. In automobile cases the primary reliance is on the testimony of eyewitnesses and on such objective evidence as may be found at the scene. *Housman v. Fiddyment*, 421 S.W.2d 284 (Mo. banc, 1967.)

The trial judge overruled objections and admitted the photographs into evidence, observing that they might be helpful to the jury. I cannot see how photographs which show the scene as darker than it actually was would be helpful. The situation is different from one in which the only difference is in the seasonal foliage. The only purpose of the photographs was to emphasize the darkness of the scene. It is unfair to receive photographs which inevitably tend to confuse the jury about the vital issue of visibility.

So this issue cannot simply be brushed off as an exercise of discretion. Although the error considered in Part I of this opinion is sufficient to require reversal, the admission of the photographs, under the circumstances, was prejudicial error giving further support to the conclusion I urge.

### 3. Expert Testimony about Headlights

The trial court also erred in allowing the driver's expert to testify about the effect of the headlights of eastbound cars on the driver's visibility. Inasmuch as the driver admitted that he saw neither the pedestrian nor any approaching headlights, the intimation that, had he looked, his vision might have been restricted by headlight glare, is rank speculation for which no foundation was laid. Our courts do not look with favor on attempts of experts to reconstruct automobile accident scenes or to make observations about what eyewitnesses might have seen. See *Housman v. Fiddyment,* 421 S.W.2d 284, 289 (Mo. banc 1967). Such speculations might be extremely damaging in a contra factual case such as this one, in which counsel is arguing what a defendant who admits that he saw neither the pedestrian nor his headlights might have seen if he had been observant.

For the errors here considered, the judgment should be reversed and the case remanded for a new trial.