The CITIZENS BANK OF WARRENSBURG, Appellant,

v.

OGDEN EQUIPMENT COMPANY, INC., et al., Respondents.

No. KCD 27212.

Missouri Court of Appeals, Kansas City District.

Aug. 30, 1976.

Garrett R. Crouch, C. B. Fitzgerald, Warrensburg, for appellant.

Edgar S. Carroll, Warrensburg, for respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment for $5,695.56 against bank and in favor of payee of check, based upon nonpayment of check which bank officer represented to payee would be paid.

Tom Ogden was in the farm implement business in Warrensburg, operating as Ogden Equipment Company, Inc. ("Ogden"). Ogden banked with The Citizens Bank of Warrensburg. Late in 1966 and early in 1967, Ogden experienced financial difficulties. It had drawn a check on its Citizens account to Morris Plan for $5,632.50 which had not been paid and returned because of insufficient funds. It also was indebted to Citizens on two notes and Citizens also held numerous customers' purchase money notes which had been executed by Ogden customers and transferred, with recourse, to Citizens.

Early in January, 1967, Mr. Ogden decided to hold a dispersal auction sale of the company's stock of farm machinery. On January 4, 1967, Mr. Ogden, following a conference with a Morris Plan representative and Mr. Adrian Harmon, executive vice-president of Citizens, executed an "agreement," according to which the proceeds of the sale were to be deposited with Citizens and Citizens was to pay the insufficient funds check payable to Morris Plan "immediately after all sums which I owe to The Citizens Bank of Warrensburg, Missouri, has (sic) been paid."

Mr. Ogden discussed the proposed sale with Bob McWhirter, a dealer in used farm equipment in Baxter, Iowa. McWhirter suggested that Mr. Ogden hire the Snells of Mexico, Missouri to conduct the auction. Mr. Ogden did so and arrangements were made by Mr. Ogden with McWhirter and the Snells for them to run some machinery they owned through the sale. Ogden was to receive a 5% commission on McWhirter's machinery sold at the sale.

The sale was held on January 28, 1967. The net sales price of McWhirter's machinery sold was $4,053.75. The clerk of the sale was Ms. Jeanette Smith, an employee of Ogden. Purchasers of machinery gave her the price they paid for their purchases, primarily in the form of checks. Sometime during the afternoon of the sale, Mr. Chris Schwensen, a vice-president of Citizens with whom Mr. Ogden transacted about half of his banking business, appeared at the sale and assisted Ms. Smith in taking the receipts of the sale. A deposit slip was prepared and $23,772.77 in cash and checks was taken by Schwensen and deposited in the bank. On Monday, January 31, 1967, an additional $3,744.05 of sale proceeds was deposited to Ogden's account.

On the evening of the sale, Mr. Ogden discussed with Schwensen the January 4 arrangement for paying the indebtedness to the bank and the Morris Plan check.

On the evening of the sale, checks were written on the Citizens account of Ogden payable to McWhirter for $4,053.75, the amount due McWhirter for his machinery which had gone through the sale; to the Snells for some $3,150.00; to equipment manufacturers for machinery sold, including one for some $12,000.00.

According to McWhirter, Mr. Ogden and Wayne Snell, the checks payable to McWhirter and the Snells were discussed with Schwensen and Schwensen assured them that the checks would be paid.

Prior to the sale deposits, Ogden's balance in the Citizens account had been $354.49. Checks drawn on the Ogden

account in connection with the sale and shortly thereafter totalled some $33,000.00.

On Monday, January 30, the Morris Plan check was paid from the account in accordance with the January 4 agreement. The account was debited for approximately $15,-000, the amount the bank claimed Ogden owed it. According to Mr. Ogden, he had not anticipated that the bank's claim would be so large, there having been no prior discussion with the bank about including defaulted customers' obligations. Following a conference between Mr. Ogden and Schwensen and Harmon, at which Mr. Ogden told the bankers that the balance in the account following the bank's action would not cover the checks issued in connection with the sale, the bank credited Ogden's account with $3,591 for notes which the bank thought might be collectible. The bank agreed to the payment of payroll and miscellaneous checks of about $1,000. The Ogden account was "flagged" to hold about $10,000 until February 13, 1967, to give out-of-town checks received at the sale time to clear.

McWhirter deposited his check in his local bank and was notified that the check was returned for insufficient funds. He called Harmon and was told that the check was drawn on uncollected funds and assured McWhirter that his check would be good when the other checks cleared and told McWhirter he would let him know when his check could be cashed.

On around February 13, Harmon called McWhirter and told him that the outstanding checks would be paid on a first come first paid basis. McWhirter came to Warrensburg and, because his first check had not been returned to him, went to Ogden and got a second check, dated February 14, 1967, for the same amount as the original check. Accompanied by his attorney, McWhirter went to Citizens to cash the check but the cashier refused to pay it, stating that "the matter was in court." Inquiry at the courthouse failed to produce information about any such action.

On February 14, Citizens filed its Petition in Interpleader, by which it tendered into court the $8,737.82 balance in the Ogden account. The petition alleged that checks in the amount of $35,284.69 on the Ogden account had been presented to it by the named defendants, including McWhirter. It asked the court to require that the defendants interplead to determine who was entitled to the funds on deposit.

Eventually, Ogden was adjudicated bankrupt. The fund which was the subject of the interpleader was paid to the trustee in bankruptcy. McWhirter received nothing from the bankruptcy proceedings.

McWhirter and three other check holders, named as defendants in the interpleader action, filed answers to the interpleader petition and counterclaims against Citizens Bank. This appeal is concerned only with the McWhirter counterclaim.

McWhirter's counterclaim alleged that he accepted Ogden's check upon the promise of Schwensen, acting on behalf of the bank, that the check would be honored upon presentation for payment. The counterclaim further alleged that such representation was fraudulent. The charge of fraud was not pursued and the counterclaim was submitted on the theory that either Schwensen or Harmon or both told McWhirter that the Ogden check would be honored by the bank. The jury returned a verdict in favor of McWhirter for $5,695.56, being the amount of the check plus interest. The bank has appealed from the judgment entered on the verdict.

On this appeal, the first complaint of the appellant is that respondent's counterclaim was insufficient to state a cause of action for fraud. That question need not be pursued, inasmuch as fraud was not the basis upon which the counterclaim was submitted. Appellant does not contend that the petition is insufficient to support the basis of recovery submitted. Disregarding the allegation of fraud, the petition does state the ultimate facts relied upon as the basis of recovery by respondent.

■ By three of its points, appellant attacks, on various grounds, instructions given at the trial. Appellant has, however,

ignored Rule 84.04(e), requiring that questioned instructions be set out in the argument in appellant's brief. Such failure nullifies the assignments of error relating to the instructions. *Lynch v. Rosenthal*, 396 S.W.2d 272, 278[7] (Mo.App.1965); *Sippel v. Custom Craft Tile, Inc.*, 480 S.W.2d 87, 91–92[6] (Mo.App.1972).

 Appellant contends that the trial court erred in not discharging the bank as a party at the time that it ruled that interpleader was a proper procedure. The transcript on appeal does not show that any request for such ruling was ever made in the trial court by motion prior to trial and the matter is not referred to in appellant's motion for new trial. This matter has not been preserved for appellate review. Rule 83.13(a).

The same defect exists with regard to the complaint that the verdict is based upon a theory not pleaded. No such objection was voiced in the trial court.

■ Appellant's final point, submitted without citation of authority in support, is that the trial court erred in striking, for cause, members of the jury panel for the reason that they were depositors in appellant bank. Appellant asserts that such action deprived it of a "representative jury panel." Four members of the jury panel were struck for cause by the court for this reason.

Appellant argues that the position of the depositors is analogous to that of residents of a city who are qualified to serve on a jury in an action against the city. This argument overlooks the fact that at common law taxpayers of a city were disqualified to serve in such cases. See *Kendall v. Prudential Ins. Co. of America*, 327 S.W.2d 174, 177 (Mo.banc 1959). This disqualification has been removed by statute. § 494.040, RSMo 1969.

"The trial court is not limited to a decision of the strict legal question of the qualification of a juror, but may exercise a sound discretion in that regard, and, when that is done, its ruling will not be disturbed. *Glasgow v. Metropolitan Street Ry. Co.*, 191 Mo. 347, 356, 89 S.W. 915 [1905]." *Robbins v. Olson-Schmidt Const. Co.*, 215 S.W. 779, 780–781[3] (Mo.App.1919). No abuse of discretion has been demonstrated in this case.

Judgment affirmed.

All concur.

DIXON, J., took no part in the consideration or decision of this case.