**PHILADELPHIA LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Robert P. MOFFAT, Nicholas Moffat and Margaret O'Shaughnessy, Defendants–Appellants,**

**and**

**Donald Lang, Defendant–Respondent.**

Nos. 55684, 55827.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 17, 1990.

134 ■

Platke & Berkowitz, Stuart R. Berkowitz & Robert D. Beekman, St. Louis, for defendants-appellants.

Armstrong, Teasdale, Schlafly, Davis & Dicus, John F. Cowling and Ann E. Buckley, St. Louis, for defendant-respondent.

KAROHL, Judge.

This lawsuit began as an interpleader action filed by Philadelphia Life Insurance Company. Philadelphia Life issued decedent, Vita Miceli, a life insurance policy providing for payment of $50,000 to the beneficiary upon her death. The original beneficiary was her husband, Donald Lang.

Just prior to her death Vita Miceli executed a change of beneficiary form which made the proceeds of the policy payable to her children by a prior marriage, Robert Moffat, Nicholas Moffat and Margaret O'Shaughnessy. [Hereafter, Moffats]. After Vita Miceli's death on December 23, 1985 defendant Lang and defendants Moffat each made a claim against Philadelphia Life for the proceeds of the life insurance policy. After depositing $50,000 into the registry of the court, Philadelphia Life Insurance Company was dismissed by consent of all claimants. By consent the opposing claims were tried to a jury. The only disputed factual issue decided by the jury was an element of Lang's claim, that at the time Vita Miceli changed the beneficiary she was acting under undue influence or was of unsound mind. The jury returned a verdict in favor of Donald M. Lang.

Moffats appeal on two grounds: (1) because this suit began as a proceeding in interpleader, an equitable action, the trial court was without jurisdiction to try the competing claims before a jury; and, in the alternative, (2) defendant Lang had a burden to prove undue influence or unsound mind by clear and convincing evidence, but the court submitted a burden of proof instruction patterned after MAI 3.01 which submitted only preponderance of the evidence as the burden of proof.

Both claims of error present questions of law. Accordingly, a brief statement of the facts will be sufficient. Two years before her death Vita Miceli married Donald Lang. Vita had three children from a prior marriage. She died on December 23, 1985, after battling pancreatic cancer for several months. In mid-December, 1985 she requested her nephew, Leo Miceli, an insurance salesman, to assist her in changing her beneficiary on a life insurance policy. Leo testified it was Vita's wish to change the beneficiary from her husband to her children and to transfer the ownership of a second policy from herself to her husband. The second policy was never involved in the present lawsuit. On December 16, 1985 Leo Miceli brought the appropriate change

of beneficiary forms to his aunt at her home where she signed them. Leo also testified that she had initiated the idea of these changes while in the hospital. He spoke with her there and at her home when the change forms were executed. On both occasions Leo explained the impact of her actions to his aunt. During this time period Vita Miceli was being given fifteen milligram injections of morphine every two to four hours for the pain from her illness.

We find the court had jurisdiction to submit the competing claims of the Moffats and Lang to a jury. While it is true that in Missouri interpleader is an action in equity and therefore not triable to a jury, there are two parts to an action commenced in interpleader. An interpleader action involves two successive litigations, one between the parties seeking interpleader and the rival claimants on the issue of the propriety of interpleader, and a second between the rival claimants on their conflicting claims. *General American Life Insurance Company v. Wiest,* 567 S.W.2d 341, 346 (Mo.App.1978).

Moffats do not claim trial court error in permitting a jury to determine the factual dispute on Lang's allegations of undue influence or unsound mind. Because they consented to a jury trial setting and jury trial they would not be heard to complain of mere error. Rather, they contend all fact issues in a case begun by interpleader must be resolved by the court because "this matter was equitable and therefore not triable by jury." In their brief, Moffats argue "the matter is jurisdictional." In support of this assertion they rely on *State of Missouri ex rel. Rope v. Borron, Jr.,* 762 S.W.2d 427 (Mo.App.1988).

*State ex rel. Rope v. Borron,* holds that when an equitable defense is presented to a claim triable by a jury a separate equitable trial shall first be conducted. The court found that claimants' probate claim depended upon the invalidity of a post-nuptial agreement. The validity and the extent of the claim would be proper for a jury only after the issue of equitable defense was determined, provided the court found the post-nuptial agreement invalid. The probate court had consolidated the claims and the defense and ordered a jury trial on all issues. *Borron* prohibited the single trial and required a predisposition of the equitable defense. The appellate court determined it had writ jurisdiction because permitting a jury trial on an equitable defense would create automatic error on appeal for either party, a jurisdictional defect.

Moffats' reliance on *Borron* is misplaced. It recognized the possibility of two successive trials in the same proceeding, one equitable and one legal. In the present case the equitable interpleader issues were totally disposed of before the jury trial on competing claims. The only issues for jury decision involved mental incompetence and undue influence. In *Borron* the court recognized the holding in *Farnsworth v. Farnsworth,* 728 S.W.2d 223 (Mo.App. 1986). *Farnsworth* permitted a jury trial on these issues in a suit to set aside an inter vivos trust. *Farnsworth,* not *Borron,* is decisive where the equitable issue, in this case interpleader, was fully resolved before the jury trial. Further, *Farnsworth* recognized there was no authority to the contrary. There are cases where these issues were tried to a jury after interpleader issues were resolved, *Citizens Bank of Warrensburg v. Ogden Equipment Co., Inc.,* 541 S.W.2d 58 (Mo.App.1976), and after issues similar to interpleader were resolved, *Wright v. Jaegeris,* 427 S.W.2d 276, 279 (Mo.App.1968). Appellants' first point is denied.

Appellants' second claim of error is the court should have offered a "clear and convincing" burden of proof instruction. The court offered an MAI 3.01 instruction over Moffats' objection. The Supreme Court previously provided a pattern instruction, MAI 3.04, which could have been adapted and submitted as the instruction on burden of proof. Moffats objected to the MAI 3.01 instruction but did not offer a modified MAI 3.04 instruction or any other alternative instruction.

The court gave the standard burden of proof instruction patterned after MAI 3.01. It provides:

In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden of causing you to believe a proposition of fact is upon the party whose claim depends upon that proposition. In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

In his cross-claim Lang pleaded his wife executed the change of beneficiary form in favor of Moffats as a product of undue influence or when she was of unsound mind. Lang had the burden of proving these allegations. When these issues are tried in equity the burden of proof is "clear, cogent and convincing." *Rapp v. Rapp*, 238 S.W.2d 80, 90 (Mo.App.1951). The burden of proof is not necessarily the same on these issues in suits at law. *See, Baker v. Bickel*, 386 S.W.2d 105, 111 (Mo. 1964). [Fraudulent misrepresentation in equity must be proven by clear and convincing evidence, but that burden is not necessarily the same in a suit at law]. Accordingly, Moffats' reliance on *Rapp* and *N.Y. Life Insurance Co. v. Wright*, 229 Mo.App. 950, 88 S.W.2d 403 (Mo.App.1935), both equity cases, is not decisive of the proper standard of proof. In both cases the court recognized "that a court in *equity* will not exercise its extraordinary powers to vacate or set aside [a change of beneficiary request] except in a clear case, where the evidence of mental incapacity or undue influence is clear, cogent, and convincing," *Rapp*, at 90. Moffats' argument is not persuasive in light of the statement in *Baker* that the burden of proof in an equitable proceeding is greater than the burden of proof on the same issue tried at law and MAI 3.01 is proper. *Baker*, at 111.

Moffats cite no Missouri authority for the proposition that the burden of proof on the contested issues, tried to a jury, was clear and convincing. Instruction No. 5, patterned after MAI 3.01, does not expressly require the jury to find the issues supported by clear and convincing evidence, nor does it prevent the jury from requiring that burden from the evidence. Leo Miceli's testimony, if believed, would have supported a finding that the insured initiated the change of beneficiary process, received an explanation of the importance of the changes before she signed the form and was of sound mind. Leo testified she was lucid when she signed the forms, did it of her own free will and fully understood what she was doing. Appellant Robert Moffat was present when his mother signed the forms and he signed as a witness. Dr. Edwin Wolfgram, a board certified psychiatrist, testified that the insured was mentally competent to sign the form.

Lang argues that these same issues in a will contest case would be submitted under an instruction patterned after MAI 3.03 which submits the same burden of proof as MAI 3.01. Hence, submission of an MAI 3.01 instruction was not error. Lang contends that *Rapp* and *N.Y. Life Insurance Co.* are equitable cases addressed to the equitable powers of a judge and the burden of proof is not the same on these issues when tried to a jury. He then claims he made a submissible case and satisfied a preponderance of the evidence burden of proof by his testimony regarding the extent of medication taken by his wife and that his wife was "very incoherent" when she came home from the hospital in December, 1985; that she would confuse different topics during a conversation. Lang also testified that his wife reported seeing things, such as flowers which needed watering, when there were no flowers. Particularly, on the date the change of beneficiary form was signed she was emotional and reported to him "something went on today with insurance papers. I don't understand what happened at ... I am all confused."

One other lay witness testified for Lang. Bart Bridgeman, a business associate of the insured, visited her on the day the change of beneficiary form was signed. He was there when her nephew came for the purpose of obtaining her signature.

He testified Vita Miceli was awake but very drugged. She was very passive and "out of it." He was asked to leave just before the signing.

Dr. Pipoly, Vita's doctor, concluded that, given Vita's medical condition and the amount of morphine she received in December of 1985, she would have been incapable of understanding what she was doing in executing a change of beneficiary form; she would not have been capable of making a complex judgmental decision; and could have been influenced to render opinions that were not her true belief. The doctor also testified that she did not have sufficient mental capacity to know what she was doing or to understand the nature of what she was doing when she signed the beneficiary form.

On the facts of this case we need not decide the proper burden of proof on the issues of undue influence or soundness of mind in the execution of a change of beneficiary form on a life insurance policy when those issues are tried to a jury. The instruction did not prejudice the Moffats. It did not misdirect or confuse the jury. At most it did not fully instruct the jury on the issue of burden of proof. The jury was free to disbelieve and evidently did discount the testimony of Leo Miceli, Robert Moffat and Dr. Wolfgram's conclusion. It found Vita Miceli was of unsound mind or was unduly influenced in signing the change form. The expert and lay testimony supporting the verdict was sufficient under either burden of proof and the instruction submitted, patterned after MAI 3.01, did not expressly permit a verdict for Lang on the lesser burden of proof. Moffats have not furnished us with the closing arguments of counsel. We are unable to determine whether the degree of burden of proof was argued by either or both parties. Even if we assume that because the court overruled Moffats' objection to the MAI 3.01 instruction the higher burden of proof was not argued there is nothing in the record to support a finding that the jury was guided by less than a clear and convincing standard. We find no prejudice as required to reverse. *Forinash v. Daugherty*, 697 S.W.2d 294, 307 (Mo.App.1985);

*Kraus v. Kraus*, 693 S.W.2d 869, 873–74 (Mo.App.1985).

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.