**RELIANCE NATIONAL INSURANCE COMPANY, a Corporation, Plaintiff,**

v.

**GREAT LAKES AVIATION, LTD., d/b/a United Express, a Corporation, et al., Defendants.**

No. 97–3289.

United States District Court, C.D. Illinois, Springfield Division.

July 13, 1998.

Thomas J. Strueber, Lord Bissell & Brook, Atlanta, GA, C. Kevin McCabe, Lord Bissell & Brook, Chicago, IL, for Reliance National Insurance Company.

Peter V. Bustamante, Michael G. McQuillen, Adler Murphy & McQuillen, Chicago, IL, for Great Lakes Aviation, Ltd., Air Wisconsin Inc., United Airlines Inc., Jeff Gathje, Sandra McCombs.

Richard E. Boyle, Gundlach Lee Eggmann Boyle & Roessler, Belleville, IL, for Raytheon Aircraft Co.

John Scott Hoff, Brandt R. Madsen, Law Offices of John Scott Hoff, Chicago, IL, for Quincy, City of.

James G. Goggin, Verrill & Dana, Portland, ME, for Arny Berger, Patricia A. Beville, Ketura Brueck, Vicki L. Carlson, Deborah A. DeSalle, Patricia Downing, Darl Heffelbower, Kathleen Reed, Kristen M. Fries, Luann Johnson.

Frederick P. Velde, Heyl Royster Voelker & Allen, Springfield, IL, Robert W. Schmieder, II, Gallop Johnson & Neuman, St. Louis, MO, William D. Shultz, Jr., Harold G. Belsheim, Thomas P. Hohenstein, Gallop Johnson & Neuman, Belleville, IL, for Robert A. Clarkson, Harvey L. Imber.

Edward J. Cunningham, Brown Hay & Stephens, Springfield, IL, Roger C. Bolin, Boyle Goldsmith & Bolin, Hennepin, IL, David E. Rapoport, David J. Kupets, Matthew L. Willens, Paul D. Richter, Rapoport & Kupets Law Offices, Rosemont, IL, Erick John Bolinder, Larry E. Hepler, Burroughs Helper Broom MacDonald & Hebrank, Edwardsville, IL, for Rita Winkelmann.

Edward J. Cunningham, Brown Hay & Stephens, Springfield, IL, D. Keith Henson, Paule Camazine & Blumenthal, St. Louis, MO, David H. Harris, Al Salvi & Associates, Waukegan, IL, Daniel J. Sugrue, Albert J. Salvi, Al Salvi & Associates, Waukegan, IL, for Joan M. Reinwald.

## OPINION

RICHARD MILLS, District Judge.

An airplane collision.

Fourteen people died in the tragedy.

## I. BACKGROUND

On November 19, 1996, a Beech King Air aircraft (King aircraft) and a Beech 1900C aircraft (1900C aircraft) operating as United Express Flight 5925/5926 collided on the runway at Quincy–Baldwin Field, an airport in Quincy, Illinois. The collision resulted in the deaths of both individuals on the King aircraft and all twelve individuals on the 1900C aircraft.

A number of state court lawsuits followed, brought by the personal representatives of the deceased passengers of the 1900C aircraft (passengers). The passengers asserted claims for wrongful death and personal injury against a number of parties including: (1) Robert Clarkson and Harvey Imber (Clarkson and Imber), the owners of the King aircraft; (2) Great Lakes Aviation d/b/a United Express (Great Lakes), the owner and/or operator of the 1900C aircraft; (3) United Airlines, the corporation which apparently contracted for Great Lakes' operation of the 1900C aircraft; (4) Raytheon Aircraft Company (Raytheon), the manufacturer of both aircrafts; and (5) the estates of the pilots of both aircrafts.

Plaintiff Reliance National Insurance Company (Reliance) then brought this interpleader action pursuant to 28 U.S.C. § 1335. Reliance had issued a liability insurance policy on the King aircraft which named as insureds the King aircraft's owners, Clarkson and Imber. Reliance anticipated that the passengers' claims could amount to more than the $1,000,000 liability limit under the policy. Accordingly, after executing a bond payable

to the Clerk of Court in the amount of $1,000,000, Reliance asked this Court to require "defendants to interplead and settle among themselves their rights to any sums claimed due under ... the policy" and to enjoin "any claim or action against [Reliance] for any recovery under ... the policy." Among the defendants named in this interpleader action are: (1) the passengers, (2) Clarkson and Imber, (3) Great Lakes, (4) the City of Quincy Illinois,[1] (5) United Airlines, and (6) the respective estates of the pilots of each aircraft.

Since its inception, this suit has generated a great deal of litigation. On November 18, 1997, Raytheon filed a cross-claim seeking "contribution" from Great Lakes, Air Wisconsin, United Airlines, the City of Quincy, Joan M. Reinwald, the personal representative of the Estate of Neal Reinwald (deceased), Sister Rita Winkelmann, Personal Representative of the Estate of Laura Brooks Winkelmann (deceased), and Clarkson and Imber. Through this cross-claim, Raytheon seeks "judgment ... in an amount commensurate with the relative fault of those defendants" in the event that Raytheon is adjudged liable for any personal injury, wrongful death or property damage arising out of the airplane collision. Subsequently, Clarkson and Imber filed a similar cross-claim against various other defendants, also seeking contribution in the event that they are held liable for any injury, death, property damage or contribution. These cross-claims led to various motions to dismiss filed by various cross-defendants and also prompted the City of Quincy to file a Motion for Rule 11 sanctions against Raytheon.

Meanwhile, on January 22, 1998, Raytheon filed a "Motion For An Order Pursuant To 28 U.S.C. § 2361." In that motion, Raytheon asked this Court to enjoin the state court wrongful death suits and "issue an order restraining the prosecution of any pending action and the institution of any other action for wrongful death, personal injury, property damage, or contribution arising out of the collision." Subsequently, Plaintiff Reliance and a number of defendants joined in Raytheon's motion. On April 1, 1998, this Court denied the motion for a restraining order under the authority of *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

Currently before the Court are the motions to dismiss the cross-claims of Raytheon and Clarkson and Imber.

## II. DISCUSSION

■ Several parties (collectively, "movants"), including the City of Quincy and the estates of Neal Reinwald and Laura Brooks Winkelmann, have moved to dismiss the cross-claims of Raytheon and Clarkson and Imber (collectively, "cross-claimants"). The cross-claimants seek contribution from various co-defendants under the Illinois Contribution Act, *see* 740 ILCS 100/2(a), in the event that the cross-claimants are held liable for any injury, death, property damage, or contribution arising out of the aircraft collision. The movants argue that these contribution claims should be dismissed because they do not relate to the subject matter of the interpleader action, that is, the fund representing the full liability limits under the insurance policy. They point out that the contribution claims can only relate to the wrongful death actions against the cross-claimants currently pending in the state courts. Cross-claimants respond that the cross-claims not only relate to the interpleader action, but form part of the basis of their claim to the interpleader fund. According to cross-claimant Raytheon, this Court must consider the state law contribution claims and determine the "relative culpability" of the various possible tortfeasors in order to properly distribute the fund.

■ Cross-claimants' argument reflects a fundamental misunderstanding about the scope and purpose of federal interpleader. The interpleader statute was never intended to provide a single federal forum in which to adjudicate the "relative culpability" of every possible co-defendant in mass tort litigation. As the Supreme Court in *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) declared,

**1.** The City of Quincy owns and operates the airport where the collision occurred.

We recognize, of course, that our view of interpleader means that it cannot be used to solve all vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose ... 'bill of peace,' capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought.

*Id.* at 536, 87 S.Ct. 1199. The Court defined the interest at stake in an interpleader action narrowly. That interest "receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader action itself." *Id.* at 535, 87 S.Ct. 1199. And contrary to cross-claimants' assertions, this Court need not determine the "relative culpability" of all potential tortfeasors in this action in order to properly distribute the interpleader fund. The distribution "can be effectively accomplished by enjoining execution against [the insurance company] under any judgment rendered against it until the actions elsewhere have been fully determined and the claims of all are liquidated by judgment." *Travelers Indem. Company v. Greyhound Lines, Inc.,* 260 F.Supp. 530, 535 (W.D.La.1966) *affirmed,* 377 F.2d 325 (5th Cir.1967).

Consider the consequences of allowing these claims to proceed in this interpleader action. For one thing, the Court would have to delve into all the substantive liability issues of comparative negligence and proximate cause, subjects which are relatively unfamiliar in the federal courts. Furthermore, the tort victims involved in the collision would be forced to litigate their state law claims in a federal forum where, because of a lack of complete diversity or federal question, they would otherwise not be required (or even permitted) to litigate them. In addition, allowing the cross-claims would produce duplicative litigation and potentially inconsistent outcomes since the tort liability issues are currently being litigated in the state courts. Should this Court allow such drastic consequences to flow from the fact that one of the players in this mass tort drama happened to have a liability insurance policy with the interpleader Plaintiff?

The Supreme Court in *Tashire* has made clear that nothing about the interpleader statute "requires that the tail be allowed to wag the dog in this fashion." *Tashire,* 386 U.S. at 535, 87 S.Ct. 1199. On the contrary, "[t]he circumstance that one of the prospective defendants happens to have an insurance policy is a fortuitous event which should not of itself shape the nature of the ensuing litigation." *Id.* at 534–35, 87 S.Ct. 1199. Although *Tashire* dealt specifically with a district court's power to enjoin outside actions over tort liability, courts in similar situations have applied *Tashire* to prohibit cross-claims on liability issues. One court, refusing to allow such a cross-claim, found

that it would be inappropriate for the scope of the [interpleader] action to be enlarged so as to bring within the confines of the action the total litigation between the parties. To permit Issa to litigate with Sauter the proximate cause of the collision of the vehicles in the action sub judice would, for all practical purposes, determine their respective rights in the controversy. This would compel Sauter to litigate the issues in a forum, not of her choosing, and in which she could not otherwise be required to litigate.

*Maryland Casualty Co. v. Sauter,* 58 F.R.D. 466, 467–68 (N.D.Miss.1973). Another interpleader court dismissed cross-complaints similar to those here, noting that *Tashire* "limits the use of interpleader to proration of the funds deposited with the Court and does not admit its use as a joinder device to bring trials on liability into a single court and leaves injured parties free to bring their actions on liability in whatever courts they choose." *Preferred Risk Mutual Ins. Co. v. Greer,* 289 F.Supp. 261, 263 (D.S.C.1968) (internal quotations omitted).

The concerns driving the above decisions are all present here. The cases cited by the cross-claimants are distinguishable. While some courts have permitted cross-claims in interpleader actions under different circumstances, none have done so in a mass tort context such as the one involved in *Sauter, Greer, Tashire,* and the instant case. In

these situations, courts must take care to ensure that the scope of the litigation on liability issues does not expand beyond the administration of the interpleader fund itself. As one leading commentator has noted,

It is in [the mass tort] situation that freely allowing cross-claims might have the effect of depriving some claimants of their right to select a forum in which to adjudicate [the liability] issue. Moreover, a limitation on cross-claims in interpleader actions of this type is consistent with the notion ... that the judge must protect the cross-claim defendant against harassment or surprise and limit the assertion of cross-claims to those situations in which they will materially promote judicial efficiency and economy. In most mass tort cases, the stakeholder will be an insurance company that is simply seeking to discharge its liability under a policy; as a result, the cross-claim, which may be attempting to establish the tort-feasor's liability above and beyond the fund, typically will not be very closely related to the interpleader claim.

7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1715. *See also Greer,* 289 F.Supp. at 263 (citing cases and secondary authorities for the proposition that "interpleader should not extend to trials on liability"). More importantly, the *Tashire* decision distinguished between situations where the fund itself is the target of the interpleader proceeding, and mass tort actions where the litigation, "in terms of parties and claims, [is] vastly more extensive than the confines of the 'fund,' ...." *Tashire,* 386 U.S. at 533–34, 87 S.Ct. 1199. In the latter situation, interpleader cannot "be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Id.* at 535, 87 S.Ct. 1199.

Cross-claimant Raytheon contends that this Court should not dismiss the cross-complaints because it has supplemental jurisdiction over the state law cross-claims. *See* 28 U.S.C. § 1367. But even assuming the Court could exercise jurisdiction here, it would not. A court may decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are ... compelling rea-

sons" to do so. 28 U.S.C. § 1367(c)(4). This Court finds "compelling reasons" for declining to exercise jurisdiction over the instant cross-claims. As already noted, allowing the claims to proceed would drastically expand the subject matter of this action, interfere with various tort plaintiffs' choice of forum, and undermine the purpose of interpleader by producing duplicative litigation and the potential for inconsistent outcomes.

Accordingly, the motions to dismiss the instant cross-claims will be allowed.

## CONCLUSION

*Ergo,* the motions to dismiss the cross-claims are ALLOWED;

The cross-claim of Raytheon Aircraft Company and the cross-claim of defendant Robert A. Clarkson and defendant Harvey L. Imber are DISMISSED.