STATE of Missouri ex rel. Randall
PHILLIPS, Relator,

v.

The Honorable John LePAGE, Associate Circuit Judge of the 40th Judicial Circuit, Respondent.

No. 24391.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 2002.

Edward J. Hershewe, Hershewe & Gulick, P.C., Joplin, MO, for Relator.

Robert M. Palmer, of the Law Offices of Robert M. Palmer, P.C., Springfield, MO, Attorney for Respondent.

JAMES K. PREWITT, Judge.

This is an original proceeding in prohibition. Randall Phillips ("Relator") filed a petition for writ of prohibition contending that the Honorable John LePage ("Re-

spondent") was without jurisdiction to deny Relator's demand for a jury trial on Relator's wrongful death claim within an interpleader action. Under Missouri Court Rule 97.04 (2000), we issued a preliminary order in prohibition. For the reasons outlined below, we quash the preliminary order. Respondent's order denying Relator's demand for a jury trial on the wrongful death claim within the interpleader action was not in error.

On April 23, 2000, a collision occurred in McDonald County, Missouri. According to the Missouri State Highway Patrol Accident Reconstruction Report, a pickup driven by Alice Doyle crossed the center line, sideswiped a vehicle driven by Donald Robertson, and continued traveling north in the southbound lane where it collided nearly head-on with a vehicle driven by Curtis Dyer. Mr. Robertson and his wife received minor injuries; Mr. Dyer and Samantha Phillips, one of the children in Dyer's car, were critically injured; Ms. Doyle, Mrs. Dyer, and three children in the Dyer vehicle, including Austin Phillips, were killed. Relator is the natural father of Samantha and Austin Phillips.

On August 1, 2000, Relator filed suit against Tom Mann, the defendant ad litem of Alice Doyle, and Curtis Dyer alleging Ms. Doyle and Mr. Dyer each were negligent and "failed to operate [their] vehicle[s] in a careful and prudent manner." With respect to Dyer, Relator alleged that Dyer failed to keep Austin and Samantha fastened in their seatbelts and had time to take action to avoid the collision, but failed to do so. Further, Relator alleged that Austin's death and Samantha's injuries were a "direct and proximate result of the ... negligence, carelessness and recklessness of Alice Doyle and Curtis Dyer" and that Relator suffered injuries and damages as well.

On September 13, 2000, Allstate Insurance Company ("Allstate") filed a petition in interpleader, which lists numerous defendants, including Relator, Dyer, the Robertsons, Carl and Mildred Nelson (Samantha Phillips' guardians), Westco Inc., St. John's Hospital, and Elk River Ambulance, Inc. Allstate provided insurance for Ms. Doyle, with policy limits of $100,000 liability coverage for each person and $300,000 for each occurrence. According to the petition, Allstate faced multiple claims that exceeded the policy limits and "is or may be exposed to double or multiple liability for the multiple claims which have or may be asserted." These claims included Relator's claims for the death of his son Austin Phillips and claims for damages or personal injuries on behalf of Samantha Phillips. By the petition, Allstate agreed to pay the entire $300,000 into the court "upon the [c]ourt's entry of an Order both discharging Allstate from all liability to make further payments under the said ... policy ... and requiring defendants to interplead between themselves their rights to the funds being deposited with the [c]ourt." Allstate furthered asked the court to "[a]djudge and apportion the amount to which each defendant is entitled and the amount to be paid to each defendant from the funds deposited." The motion for interpleader was sustained on December 5, 2000; Allstate was directed to pay the $300,000 to the court and was discharged from any further liability.

Originally an unlisted defendant in the interpleader action, the Missouri Department of Social Services, Division of Medical Services ("Department"), filed an answer to the petition in interpleader, counterclaim and cross-claims on March 2, 2001. The Department claimed it had expended nearly $7,000 in medical assistance on behalf of Austin Phillips and nearly $40,000 on behalf of Samantha Phillips. One of the Department's cross-

claims was against Relator in which the Department asserted its statutory right under § 208.215 .6, RSMo Supp.1999, to receive the nearly $7,000 from any and all proceeds for which Allstate is liable to pay Relator under his wrongful death claim. The Department's other cross-claim was against the Nelsons as guardians of Samantha Phillips.

Relator filed a demand for jury trial on June 25, 2001, and suggestions in support of demand for jury trial on July 2, 2001. Respondent denied Relator's demand for a jury trial on July 11, 2001. On July 30, 2001, Relator filed a petition in prohibition and mandamus with this Court. Relator argued that Respondent's order denying Relator's demand for a jury trial violated Relator's rights under the Missouri Constitution and that Respondent lacked jurisdiction to enter such an order. Relator asked this Court to issue a writ of prohibition forbidding Respondent from enforcing the order and from conducting a bench trial and acting as finder of fact in the trial of Relator's wrongful death claim within the interpleader action. Relator also asked this Court to issue a writ of mandamus directing the trial court to vacate its order and mandating that the trial court impanel a jury to act as finder of fact on the wrongful death claim within the interpleader action.

We issued a preliminary order in prohibition on August 21, 2001, under which Respondent was directed not to proceed with the trial of the interpleader action until further order from this Court. On September 4, 2001, Respondent filed an answer to petition in prohibition and mandamus.

■ "The remedy afforded by the writ of prohibition shall be granted to prevent usurpation of judicial power." § 530.010, RSMo Supp.1999. The intention is not for a writ to serve as " 'a remedy for all legal difficulties nor ... as a substitute for appeal.' " *State ex rel. Tolbert v. Sweeney,* 828 S.W.2d 929, 930 (Mo.App.1992) (quoting *State ex rel. Eggers v. Enright,* 609 S.W.2d 381, 382 (Mo. banc 1980)). It is an extraordinary remedy that should lie "only in cases of extreme necessity." *State ex rel. Lester E. Cox Med. Ctr. v. Wieland,* 985 S.W.2d 924, 926 (Mo.App.1999). The primary function of prohibition is to limit judicial activities to those within bounds of "authority, preventing actions in want or in excess of the court's jurisdiction." *Tolbert,* 828 S.W.2d at 930 (quoting *Eggers,* 609 S.W.2d at 382).

■ Appellate courts issue such writs in their discretion and only when the trial court has acted arbitrarily or unjustly. *See State ex rel. Soete v. Weinstock,* 916 S.W.2d 861, 863 (Mo.App.1996); *see also State ex rel. Bates v. Rea,* 922 S.W.2d 430, 431 (Mo.App.1996). If Respondent has inappropriately denied Relator's demand for a jury trial, then the trial court has acted arbitrarily, unjustly, and outside of its jurisdiction, which would render prohibition a suitable remedy. *See Tolbert,* 828 S.W.2d at 930. It is Relator's burden to demonstrate for this Court that Respondent has usurped the trial court's jurisdiction. *See id.*

Relator made a demand for a jury trial within an interpleader action in which he is one of the numerous defendants. Allstate brought an action in interpleader because it was "faced with conflicting and competing claims regarding disbursement of [a] fund" consisting of the policy limits of the insurance coverage it had on Ms. Doyle. *Amwest Sur. Ins. Co. v. Stamatiou,* 996 S.W.2d 708, 711 (Mo.App.1999) (quoting *Cmty. Title Co. of St. Louis v. Lieberman Mgmt. Co.,* 817 S.W.2d 255, 258 (Mo.App. 1991)). Allstate, as the stakeholder of the fund, sought the remedy of interpleader "based on the theory that conflicting claim-

ants should litigate the matter among themselves without involving the stakeholder in their dispute and that the [stakeholder] may completely 'buy his peace' and be discharged from further liability by paying the money claimed into court." *Amwest Sur. Ins. Co.*, 996 S.W.2d at 711–12.

■ There are two parts to an interpleader action. *See Philadelphia Life Ins. Co. v. Moffat*, 783 S.W.2d 133, 135 (Mo. App.1989). The first part is a litigation between the party seeking interpleader and the rival claimants, and involves a determination of whether interpleader is appropriate for the situation. *See id.* There is no issue before us regarding the propriety of interpleader in this case; the trial court determined interpleader was appropriate when it sustained Allstate's motion for interpleader, directing Allstate to pay the $300,000 into the court and discharging Allstate from any further liability.

The second phase of an interpleader proceeding involves only the rival claimants as they litigate among themselves based on their conflicting claims. *See Amwest*, 996 S.W.2d at 712. The issue before us is the propriety of having these conflicting claims heard before a jury in this case. Relator argues it is not only appropriate to have a jury hear these claims, but that it is fundamental to his rights under the Missouri constitution, based on the types of claims he brings, specifically the wrongful death claim. Respondent argues that the determination of the wrongful death claim is not an issue before the trial court. Respondent contends the trial court's role is only to oversee the "orderly administration of the interpled fund," and that the wrongful death claim will be handled in the separate proceeding Relator has brought against Ms. Doyle's defendant ad litem and Mr. Dyer.

This appears to be a case of first impression in Missouri, so we will look to Missouri law in areas related to the issues raised by Relator and Respondent and also federal and other state law that may provide assistance to our determination. Cases exist that involve motor vehicle accidents, or other situations such as airplane crashes, in which an insurer is faced with multiple or conflicting claims that surpass policy limits and where other tort claims have been filed (or are contemplated) within the original interpleader proceeding or in other proceedings against the insurer or other parties. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); *Empire Fire and Marine Ins. Co. v. Crisler*, 405 F.Supp. 990 (S.D.Miss.1976); *Reliance Nat'l Ins. Co. v. Great Lakes Aviation, Ltd.*, 12 F.Supp.2d 854 (C.D.Ill.1998); *Pan American Fire & Cas. Co. v. Revere*, 188 F.Supp. 474 (E.D.La.1960).

*Tashire* stemmed from a collision between a bus and a pickup that led to multiple suits between injured parties as well as insurance companies. *See Tashire*, 386 U.S. at 525–26, 87 S.Ct. 1199. At issue in the case, which was based on the federal interpleader statute, was how far the district court could go in enjoining suits outside the interpleader action that were associated with the incident. *See id.* at 527–28, 87 S.Ct. 1199. The United States Supreme Court determined "that federal interpleader was not intended to serve the function of a 'bill of peace' in the context of multiparty litigation arising out of a mass tort." *Id.* at 537, 87 S.Ct. 1199. The Court found that the district court exceeded its power under the federal interpleader statute by issuing an order that not only enjoined suits against the insurer outside the interpleader proceeding, but also extended that protection to its insured (who was also the alleged tortfeasor). *See id.* at

533, 537, 87 S.Ct. 1199. The Court noted that "the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the 'fund.'" *Id.* at 533–34, 87 S.Ct. 1199. According to the Court, the existence of the fund and the use of interpleader could not "be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Id.* at 534, 87 S.Ct. 1199.

The *Crisler* case arose out of a multiple vehicle collision and the action brought by one of the insurance companies was also based on the federal interpleader statute. *See Crisler*, 405 F.Supp. at 991. Various cross and third-party claims were filed, including wrongful death claims against the insured (the owner of a tractor-trailer that was involved in the initial collision), the driver of said tractor-trailer, and the driver of a vehicle involved in a subsequent collision. *See id.* at 991–92. The district court followed *Tashire* and noted it could provide "limited injunctive relief" in terms of dismissing claims related to the incident. *Id.* at 993–94. The claims dismissed were the cross and third-party claims that were not against the insurer or not related to the policy limits of the insurance coverage, such as personal injury and wrongful death claims against the drivers of vehicles involved in subsequent collisions. *See id.*

*Great Lakes Aviation, Ltd.*, followed the collision of two airplanes on a runway. *See Great Lakes Aviation, Ltd.*, 12 F.Supp.2d at 855. The insurance company that filed under the federal interpleader statute had a liability insurance policy on the smaller aircraft involved and its owners as the insureds. *See id.* A number of wrongful death and personal injury suits were filed in state court, including those against the insureds, as well as other parties. *See id.* Various cross-claims were filed within the interpleader action in which parties sought contribution from other defendants should the parties be "adjudged liable for any personal injury, wrongful death or property damage arising out of the airplane collision." *Id.* at 856. At issue before the district court were motions to dismiss several of the cross-claims. *See id.* Those who had filed the cross-claims argued that the district court had to "consider the state law contribution claims and determine the 'relative culpability' of the various possible tortfeasors in order to properly distribute the fund." *Id.*

The district court applied *Tashire* and noted that the federal "interpleader statute was never intended to provide a single federal forum in which to adjudicate the 'relative culpability' of every possible co-defendant in a mass tort litigation." *Id.* In the district court's opinion, the proper distribution of the interpled fund was not affected by the determination of comparative culpability and observed that "[t]he distribution '[could] be effectively accomplished by enjoining execution against the insurance company under any judgment rendered against it until the actions elsewhere have been fully determined and the claims of all are liquidated by judgment.'" *Id.* at 857 (quoting *Travelers Indem. Co. v. Greyhound Lines, Inc.*, 260 F.Supp. 530, 535 (W.D.La.1966), *aff'd*, 377 F.2d 325 (5th Cir.1967)). That the interpleader action was in the federal court as opposed to a state court may have been significant to the decision as the district court outlined "the consequences of allowing [such] claims to proceed in the interpleader action.... [T]he [c]ourt would have to delve into all the substantive liability issues of comparative negligence and proximate cause, subjects which are relatively unfamiliar in the federal courts." *Id.*

The *Revere* case involved a collision between a tractor-trailer and a school bus in

which several were injured or killed. *See Revere,* 188 F.Supp. at 476. A second collision occurred when one vehicle stopped to avoid hitting the bus, but was hit by another vehicle. *See id.* The insurer of the tractor-trailer brought an interpleader action. *See id.* Much of the case discusses the appropriateness of interpleader, particularly a petition based on unliquidated tort claims that, if liquidated, would exceed the limits of the insurance policy. *See id.* at 476, 482.

The case also addresses the issue of conducting a jury trial within the interpleader and initially notes precedent "that once interpleader is granted all issues in the case must be tried to the judge alone." *Id.* at 483. As with the other cases discussed above, *Revere* also was based on federal interpleader. *See id.* at 476. A Missouri case that was mentioned earlier, *Moffat,* addresses the general appropriateness of juries within Missouri interpleader actions, and makes a similar statement, noting that "it is true that in Missouri interpleader is an action in equity and therefore not triable to a jury." *Moffat,* 783 S.W.2d at 135. However, both cases leave the door open for the use of juries within an interpleader action. *See Revere,* 188 F.Supp. at 483; *Moffat,* 783 S.W.2d at 135.

The *Revere* court followed a line of reasoning contained in what it considered "eminent authority." *Revere,* 188 F.Supp. at 483 (citing writings by Professor Chafee and Judge Learned Hand). These authorities argued "that legal issues arising in an interpleader action can be tried before a jury." *Id.* The district court in *Revere* determined that in the case before it, "the questions of liability and damages ought to be put to a jury." *Id.* The district court noted that federal interpleader allowed separate trials to hear the claims, but determined that the statute also invited a solution whereby legal issues would be heard by a jury within the interpleader proceedings, which would also maintain each party's Seventh Amendment rights. *See id.* "Each claimant can be given a full opportunity to prove his case before a jury, reserving to the court only the task of apportioning the fund between those who are successful if the aggregate of the verdicts exceeds the amount of the insurance proceeds." *Id.*

In *Moffat,* one of the rival claimants appealed the jury verdict in an interpleader action, arguing that as an equitable action, there was no jurisdiction for the trial court "to try the competing claims before a jury." *Moffat,* 783 S.W.2d at 134. The appellate court determined that "the equitable interpleader issues were totally disposed of" in the first phase of the interpleader action, which occurred "before the jury trial on competing claims." *Id.* at 135. The *Moffat* court recognized cases in which "issues were tried to a jury after interpleader issues were resolved." *Id.* In particular, the court noted a case in which a counterclaim involving the presentation of a check for payment from an interpled account was heard before a jury within that second phase of an interpleader action. *See id; see also Citizens Bank of Warrensburg v. Ogden Equipment Co., Inc.,* 541 S.W.2d 58, 60 (Mo.App.1976).

As noted previously, the federal interpleader case of *Tashire* arrived at a conclusion that a district court could not enjoin suits outside of the interpleader action that were not against the insurer (fund stakeholder) or that did not relate to the policy limits represented by the interpled fund. *See Tashire,* 386 U.S. at 533, 537, 87 S.Ct. 1199. The Court noted that those claims went beyond "the confines of the fund [and] . . . . the needs of orderly contest with respect to the 'fund.'" *Id.* at 534, 87 S.Ct. 1199. However, there is

authority that wrongful death or personal injury cross-claims are appropriate within Missouri interpleader. *See American Family Mut. Ins. Co. v. Robbins,* 945 S.W.2d 52, 54 (Mo.App.1997). Within *Robbins,* the liability insurer of one of the vehicles involved in a collision brought an interpleader action and the court heard cross-claims that included personal injury and wrongful death claims against the other driver. *See id.* The trial judge heard the claims and assessed 50% fault to that other driver. *See id.* at 53. On appeal, it was determined that there was not substantial evidence for the trial court's finding regarding assessment of 50% fault, but the appellate court did not address whether it was appropriate for the trial court to hear those cross-claims without a jury. *See id.* at 55.

There is also Missouri authority that the resolution of a cause of action between plaintiffs (parents of a decedent killed in automobile collision) and an insurer based on plaintiffs' uninsured motorist coverage in which the trial judge apportioned the policy limits to plaintiffs and decedent's son who had intervened, would not affect the level of damages in a separate cause of action based on a wrongful death claim plaintiffs had filed against an uninsured motorist. *See Ashcraft v. Ashcraft,* 689 S.W.2d 693, 694–96 (Mo.App.1985). The court noted that the result of the first action and its order regarding the distribution of the total uninsured motorist policy funds would not determine the total damages in the separate wrongful death claim, but that the award of damages in the wrongful death "cause of action [would] be reduced to the extent of any recovery awarded in this cause of action." *Id.* at 694–95 n. 1. The court noted that although the wrongful death statute "requires that all those damages be determined prior to disbursement[,] .... [t]he statute does not

address damages to be recovered from a source other than the tort-feasor." *Id.*

In Missouri, it is well-established precedent that a party generally is entitled to a jury trial in a civil action for a money judgment involving a dispute of facts. *See Jaycox v. Brune,* 434 S.W.2d 539, 542 (Mo. 1968). Relator has raised issues of fact and comparative liability, and also has a competing claim to the interpled fund. Cases involving the federal interpleader statute have shied away from dealing with issues of comparative negligence and proximate cause within interpleader proceedings because such "subjects ... are relatively unfamiliar in the federal court." *Great Lakes Aviation, Ltd.,* 12 F.Supp.2d at 857. However, state courts are well equipped to handle such issues. Further, as noted above, such issues are of the type appropriate for jury trials in Missouri. *See Jaycox,* 434 S.W.2d at 542.

Missouri's *Moffat* case found that issues in that case's second phase of interpleader were at law rather than equity and therefore appropriately heard before a jury. *See Moffat,* 783 S.W.2d at 135. A Kansas case noted that within that second phase of an interpleader proceeding, "the trial of disputed claims to the fund, such as those which involve liability or the extent of injuries and damages, may be by [a] jury." *Club Exchange Corp. v. Searing,* 222 Kan. 659, 567 P.2d 1353, 1358 (1977). The federal *Revere* case came to a similar conclusion that "questions of liability and damages ought to be put to a jury." *Revere,* 188 F.Supp. at 483.

Thus, we have authority stated in the previous paragraph for having legal claims in the second phase of an interlpeader proceeding heard before a jury. *See Moffat,* 783 S.W.2d at 135; *Searing,* 567 P.2d at 1358; *Revere,* 188 F.Supp. at 483. There is also authority in Missouri under which wrongful death claims may be heard

within an interpleader action. *See Robbins,* 945 S.W.2d at 54 (although in the case noted, such claim was not heard before a jury). Finally, wrongful death claims involve issues under which a claimant is normally entitled to a jury. *See Jaycox,* 434 S.W.2d at 542.

Reconciling the cases, nearly all of the elements are present in the instant case under which we could prohibit Respondent from denying Relator's demand for a jury trial within the interpleader action. However, the missing element is dispositive. Not all of the alleged tortfeasors are present in the interpleader action. Relator claims Dyer, who is a party to the interpleader action, was also negligent in the collision. However, alleged tortfeasor Doyle (now represented by her defendant ad litem, Tom Mann, in Relator's wrongful death action), whose insurance coverage is represented by the interpled fund, is not a party to the interpleader action. Relator has a separate wrongful death cause of action filed against Ms. Doyle's defendant ad litem and Dyer as alleged tortfeasors, following Missouri statutes §§ 537.021 and 537.080, RSMo Supp.1999. There is no question Relator is entitled to a jury trial in that separate case. Relator's jury trial right against the alleged tortfeasors cannot be denied by Allstate's interpleader. Whether or not Allstate's liability is limited, that right continues to exist as Relator's right to recovery is not limited to Allstate's liability. *See Ashcraft,* 689 S.W.2d at 696. However, judicial economy would indicate that two jury trials are unnecessary to hear Relator's claims.

Given the circumstances before us in the instant case, it is similar to *Tashire,* where "the scope of the litigation, in terms of parties and claims, [is] vastly more extensive than the confines of the 'fund.'" *Tashire,* 386 U.S. at 533–34, 87 S.Ct. 1199. Also from *Tashire,* we must therefore be careful not to use the interpleader proceeding "to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Id.* at 534, 87 S.Ct. 1199. Following the reasoning of the Missouri *Ashcraft* case, the trial court here may make determinations necessary in order to apportion the policy limits based upon the claims of damages before it. *See Ashcraft,* 689 S.W.2d at 695–96. Since Relator is in not limited to damages received from the insurance company, the apportionment from the interpleader action might only affect his separate wrongful death cause of action against the alleged tortfeasors by reducing any recovery in the wrongful death action based on damages received in the interpleader action. *See id.* at 694–95 n. 1.

Respondent's order denying Relator's demand for a jury trial on his wrongful death claim within the interpleader action was not in error.

The preliminary order in prohibition is quashed and Relator's petition denied.

GARRISON, P.J., and RAHMEYER, J., concur.